VILLAGE OF PINE CITY vs. ANNA MUNCH and others.

January 14, 1890.

**Municipal Corporation—Suit in Equity to Abate Public Nuisance.—** Where a municipal corporation is, by its charter, authorized, by ordinances or by-laws, "to remove and abate any nuisance injurious to the public health," and "to do all acts and make all regulations which may be necessary and expedient for the preservation of health or the suppression of disease," it may, at its election, in cases falling within some recognized head of equity jurisdiction, resort to a court of equity to aid it in enforcing its public duties to preserve the public health of its inhabitants, and maintain in its own name an action to abate a public nuisance within its corporate limits affecting the public health of the municipality.

**Nuisance, when Justified by Legislative Authority.—** In order to justify a nuisance by legislative authority, it must be the natural and probable result of the act authorized, so that it may fairly be said to be covered by the legislation conferring the power. If the authorized act does not necessarily or naturally create a nuisance, but such result flows from a particular manner of doing the act, the legislative license is no defence.

Appeal by defendants from an order of the district court for Pine county, Crosby, J., presiding, overruling their demurrer to the complaint.

J. M. Gilman and W. S. Moore, for appellants.

Gordon E. Cole, for respondent.

MITCHELL, J. This is an action to restrain, by injunction, a public nuisance injuriously affecting the lives and health of the inhabitants of the village; and the principal question is the right of the plaintiff to maintain such an action. The appeal is from an order

overruling a demurrer to the complaint.   The nuisance complained of is that the defendants, (who have erected and maintained a dam across Snake river, within the corporate limits of the village, to accumulate water in a pond to aid in sluicing logs, and by means of which large tracts of flat land within the village are overflowed when the pond is full,) in the hot months of the summer, open the gates and sluices in the dam, and draw off nearly all the water in the pond, thereby converting these overflowed lands into marshes and swamps, when the mass of decaying vegetable matter with which the land is covered decomposes in the heat of the sun, filling the air with malaria and miasma, which causes wide-spread sickness and death among the inhabitants of the village.   Part of the relief asked is that the defendants may be enjoined from so operating the dam as to draw off the water in the pond, and lay bare these submerged lands, at seasons injuriously affecting the public health of the village.   The contention of the defendants is that an action to abate a public nuisance cannot be maintained by a private individual unless he sustains special injury different in kind from that suffered by the public at large, and that the plaintiff in this case stands upon the same footing as to this nuisance as a private person not sustaining any special injury, inasmuch as the village in its corporate capacity does not sustain any such injury.

It is undoubted law that, except in the case of a private person sustaining injury special in kind, a bill to restrain an existing or threatened public nuisance by injunction will only lie at the suit of the state, or of some proper officer or body as the authorized representative of the state.   It must also be conceded that a municipal corporation has no control over nuisances within its corporate limits, except such as is conferred upon it by its charter or general laws. But these propositions are not, in our judgment, decisive of this case. The plaintiff is a village incorporated under Sp. Laws 1881, *c.* 38. Chapter 4 of this act, which defines the general powers of the common council of the village, provides that they shall have authority, by ordinances, resolutions, or by-laws: "(25) To remove and abate any nuisance injurious to the public health;" "(27) To do all acts and make all regulations which may be necessary and expedient for the

preservation of health or the suppression of disease." And section 5 of chapter 4 of the act provides that "the powers conferred upon the common council to provide for the abatement of any nuisance shall not bar or hinder suits, prosecutions, or proceedings in court according to law." Under these grants of power, undoubtedly the common council could pass an ordinance prohibiting or abating the nuisance complained of, and provide for its enforcement by appropriate penalties. In fact, they did pass an ordinance prohibiting drawing off the water in the pond below a certain depth, which, however, the defendants have disobeyed. Is the plaintiff, in the matter of remedies for the abatement of a nuisance in such cases, limited to the enforcement of the penalties prescribed by ordinance, or may it resort to a court of equity to restrain or abate it?

Municipal corporations are governmental agencies, created to assist in the civil government of the county in the district incorporated, and within that district, to the extent of the powers granted, they are in fact the agents and representatives of the state. To this village, as is usual in the case of municipal corporations of that class, is given the power, and intrusted the duty, of preserving and protecting the health of its inhabitants, by providing for the removal of all public nuisances of the kind here complained of. To this extent it is the agent of the state. A "public" nuisance does not necessarily mean one affecting the government or the whole community of the state. Very few nuisances are thus extended in their effects. It is "public" if it affects the surrounding community generally or the people of some local neighborhood. Such is the character of the nuisance in this case. It affects the inhabitants of this village. It is one of the very class of nuisances which the common council, as a sort of local health board, has been authorized, as a governmental agency, to abate in order to protect the health of the inhabitants of the incorporated district. Under such circumstances, we can see no valid reason why, in proper cases falling within some recognized head of equity jurisdiction, a municipal corporation, as the representative of the state *pro hac vice*, may not, at its election, resort to a court of equity to aid in enforcing its public duties to preserve the health of its inhabitants. As there is, in analogous cases, a judicial remedy

in favor of the citizen, it would seem, on principle, that the corporate authorities should be allowed to resort to the courts to aid them when the citizen is in the wrong. Limited strictly to such cases, we do not see that this right at all impinges upon the rule that a private person cannot maintain an action to abate a public nuisance not causing injury special in kind to himself. Neither would this be the exercise by the corporation of a control over nuisances not granted by its charter, but merely resorting to the courts for a more effectual judicial remedy to aid in enforcing its granted powers. There are many cases, of which this would seem to be one, where the remedy by injunction would be much more efficacious than by enforcing the penalties of an ordinance; and where the nuisance is one affecting only or principally the inhabitants of the municipality, and its abatement is among the powers granted or duties imposed upon it, there would seem to be no good reason why the action to abate might not be brought in the name of the municipality, as well as in the name of the state itself by the attorney general. Such seem to be the views of Dillon, the leading authority in this country upon powers of municipal corporations. 1 Dill. Mun. Corp. § 379 and section 405, note 2. The authorities on this question are meagre in number, but, as bearing somewhat upon it, see 3 Pom. Eq. Jur. § 1349; *Mayor, etc.,* v. *Bolt,* 5 Ves. 129; *City of Rochester* v. *Erickson,* 46 Barb. 92; *Inhabitants of Winthrop* v. *Farrar,* 11 Allen, 398; *Inhabitants of Watertown* v. *Mayo,* 109 Mass. 315; *City of Taunton* v. *Taylor,* 116 Mass. 254, 262. Also remarks of Bacon, V. C., in *Nuneaton Local Board* v. *Sewage Co.,* L. R. 20 Eq. 127; *Mayor, etc.,* v. *Marriott,* 9 Md. 160, 174.

It is suggested that this dam was erected by authority of law, and that whatever is authorized by the legislature or its authority cannot be abated as a nuisance. This question is not raised by the demurrer, but, if the fact be as claimed by the defendants, it might be a reason why the dam itself could not be abated, but none why the defendants should not be enjoined from so operating it as to create a public nuisance. If the legislature expressly authorizes an act which must inevitably result in public injury, what would otherwise be a nuisance may be said to be legalized; but if they author-

ize an erection which does not necessarily produce such a result, but such result flows from the manner of construction or operation, the legislative license is no defence. In order to justify a nuisance by legislative authority, it .must be the natural and probable result of the act authorized, so that.it may fairly be said to be covered by the legislation conferring the power. Wood, Nuis. 853–861.

Order affirmed.