[File No. 6750]

ODELIA MESSER, Respondent, v. CITY OF DICKINSON, NORTH DAKOTA, a Municipal Corporation, Appellant.

(3 NW(2d) 241)

Opinion filed March 31, 1942

*J. W. Sturgeon* and *C. H. Starke,* for appellant.

*Simpson, Mackoff, & Kellogg,* for respondent.

MORRIS, J. This is an action for damages against the city of Dickinson for maintaining a nuisance. The plaintiff is the owner of a building used as a second-class hotel. It is located on the south side of the city near the Heart River. The main sewer of the city empties into the Heart River at a point downstream approximately 600 feet east by north of plaintiff's building. The plaintiff is not a riparian owner. The Heart River is a non-navigable stream. The plaintiff claims that since December, 1932, offensive and nauseating odors, stenches, and gases have been generated by and because of the pollution of the stream resulting from the sewage emptied therein by the city. It is claimed that in the summer time and when the wind is in an easterly direction or the air is calm, the offensiveness of the odors is so intense that guests in the plaintiff's hotel are unable to sleep and it is impossible to serve meals at the hotel. On December 13, 1937, the plaintiff filed her claim for damages with the city. Payment thereof has been refused. The plaintiff seeks damages in the sum of $4,000 and interest.

The defendant pleads that it has established and does operate a sewerage system as a governmental function and pursuant to specific statutory authorization. It relies upon § 3697, ND Comp. Laws 1913, which authorizes cities to establish and maintain sewers and upon § 7231, ND Comp. Laws 1913, which provides, "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

It appears that subsequent to the institution of this suit and prior to the trial thereof, a sewage disposal plant was installed and is in operation. The plant now renders the sewage free from the properties which resulted in the situation that is the basis of the suit. Thus, the nuisance, if any, has now been abated. The trial court denied an application for an injunction but awarded damages for injury prior to abatement in the sum of $1,152 for which judgment was entered.

The defendant demurred to the complaint, the trial court overruled the demurrer, the defendant then answered and the case was tried on the merits.

The plaintiff not being a riparian owner, the law pertaining to the

rights of riparian owners is not directly applicable to this case. There has been no encroachment upon the plaintiff's property unless the invasion of the air above the premises by the noxious odors and gases be so considered. The complaint clearly attempts to allege the creation and maintenance of a nuisance on the part of the City of Dickinson. The plaintiff so interprets her complaint when she says in her brief, "While the invasion of the air by a putrid odor is a substantial taking of property, nevertheless a reading of the Complaint will show that this is not an action based upon implied contract for taking of property without due process of law or under the eminent domain theory. A reading of the Complaint will show that this is purely a tort action based upon the unlawful interference by the creation of a nuisance on the part of the Defendant with the Plaintiff's business. There is no allegation in the Complaint that Plaintiff's property has been taken without due process of law. The Complaint alleges a nuisance, tortious conduct. And the discussion of eminent domain is not pertinent. Neither is the discussion which follows therefrom as to the riparian ownership."

The plaintiff contends that where a municipal corporation creates and maintains a nuisance it is liable for damages to any person suffering special injury therefrom and that such liability exists irrespective of any question of negligence.

The defendant on the other hand contends that it is authorized by statute to do the thing complained of in this action and as authority cites § 3697, ND Comp. Laws 1913, which vests in cities the power to establish and maintain a general sewerage system in the manner and under the regulations prescribed by the city council. This section also provides "that any city may empty or discharge its sewerage into any river." The city contends that in emptying its sewage into the Heart River it did so strictly in accordance with specific statutory authority and that it cannot be charged with maintaining a nuisance in so doing. In support of this position, the city cites § 7231, ND Comp. Laws 1913, which states "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." From the foregoing statutes it appears that in performing the acts that

are made the basis of this action the city of Dickinson has acted in accordance with statutory authority.

Here we have the situation where the legislature has authorized the city of Dickinson by general statute to empty its sewage into the river and has declared that nothing done under authority of statute shall be deemed a nuisance. The action of the city has, according to the contention of the plaintiff, so polluted the air above plaintiff's premises that it has resulted in a diminution of the value of her property.

We find the case of Jacobs v. Seattle, 93 Wash 171, 160 P 299, LRA 1917B 329, very much in point. In that case, in one cause of action, it was alleged that a garbage incinerator maintained and operated by the city caused a large amount of ashes, cinders, dust, and disagreeable and noxious odors and gases to permeate the atmosphere in the vicinity of the plaintiff's premises to such an extent as to be a menace and danger to the health of the occupants, and injured, lessened and destroyed the value of the property in such a manner as to create a nuisance. The court cited the statute authorizing the installation of plants for garbage disposal and quoted a section of the Washington Code identical with our § 7231, Comp. Laws. The court then held that by virtue of those statutes the maintenance of a garbage incinerator in a proper manner and place would not constitute a nuisance in a legal sense. However, the court also held that recovery could be had upon another cause of action based upon a constitutional inhibition against the taking or damaging of property without just compensation.

In Joyce on Nuisances, § 69, it is said that, "The power of the legislature is here recognized as omnipotent within constitutional limits, while it may legalize an act which might otherwise be a nuisance, it cannot authorize the taking of private property for public use without just compensation. And the rule may be stated to be that where one has the sanction of the state for what he does unless he commits a fault in the manner of doing it, he is completely justified, provided the legislature has the constitutional power to act. And the legislature may, except so far as it may be limited by constitutional restrictions, when deemed necessary for the public good, permit or require that to be done which would, on common law principles, and without the statute, be deemed a nuisance. And it is a general rule that where an act is made

lawful by legislative sanction, annoyances in connection therewith must be borne by the individual subject to this qualification that the act must be done without negligence or unnecessary disturbance, by the one doing it, of the rights of others."

The plaintiff cites People v. Reedley, 66 Cal App 409, 226 P 408, as authority for the proposition that an act specifically authorized by statute may be treated as a nuisance by the courts despite the fact that the statute says that "nothing which is done or maintained under the express authority of a statute shall be deemed a nuisance." Civil Code of Cal. § 3482. In that case the court had under consideration an application to enjoin the city of Reedley from discharging sewage into a river. It appears that the city had a permit, to so discharge sewage, issued by the State Board of Health under statutory authority. The court held that this permit was not a conclusive or absolute defense to an action to abate what was alleged to be a public nuisance resulting from the disposal of the city's sewage. The court denied the city's contention upon the ground that the power of the court to abate nuisances was found in the Constitution and could not be eliminated or abridged by statute. The California Constitution (Art. 6, § 5), vests in the court, power to abate nuisances. Our Constitution is wholly silent with regard to this subject. Neither constitutional nor inherent rights of courts of equity to abate nuisances are involved on this appeal. The only question before us is the right of the plaintiff to maintain a suit for damages.

The supreme court of California in Pasadena v. Stimson, 91 Cal 238, 27 P 604, had before it the question of the right of a municipality to acquire by eminent domain property over which to lay a sewer. One of the grounds for resisting the acquisition was that the proposed sewer would be a nuisance injuriously affecting private rights. In rejecting this contention, the court had this to say, "A sewer in the neighborhood of dwellings may be an evil, but it is evident that the legislature regards it as a necessary evil, since it allows private property to be taken for the construction of sewers. Sewers are in fact a necessary evil; but when they are planned and constructed with reasonable regard to the results of sanitary teachings they are authorized by statute, and 'nothing which is done or maintained under the express authority

of a statute can be deemed a nuisance.' Civil Code, § 3482. In short, the plaintiff, being a city with sewage to dispose of, and having a sewer farm to which it has apparently a right to conduct it, has necessarily the right to construct such a sewer as the statute (Code Civ. Proc. § 1238) contemplates, and such a sewer cannot be a nuisance in the strict sense of the term."

In Northern Transp. Co. v. Chicago, 99 US 635, 25 L ed 336, the Supreme Court of the United States said, "That cannot be a nuisance, such as to give a common-law right of action, which the law authorizes. We refer to an action at common law such as this is. A legislature may and often does authorize and even direct acts to be done which are harmful to individuals, and which without the authority would be nuisances; but in such a case, if the statute be such as the legislature has power to pass, the acts are lawful, and are not nuisances, unless the power has been exceeded. In such grants of power a right to compensation for consequential injuries caused by the authorized erections may be given to those who suffer, but then the right is a creature of the statute. It has no existence without it. If this were not so, the suffering party would be entitled to repeated actions until an abatement of the erections would be enforced, or perhaps he might restrain them by injunction."

Among the cases sustaining the general proposition that courts will not hold conduct to be a nuisance where it is authorized by legislative enactment are the following: Law v. Spartanburg, 148 SC 229, 146 SE 12; Frazer v. Chicago, 186 Ill 480, 57 NE 1055, 51 LRA 306, 78 Am St Rep 296; Murtha v. Lovewell, 166 Mass 391, 44 NE 347, 55 Am St Rep 410; Levin v. Goodwin, 191 Mass 341, 77 NE 718, 114 Am St Rep 616; Pine City v. Munch, 42 Minn 342, 44 NW 197, 6 LRA 763; Hinchman v. Paterson Horse R. Co. 17 NJ Eq 75, 86 Am Dec 252; Cogswell v. New York, N. H. & H. R. Co. 103 NY 10, 8 NE 537, 57 Am Rep 701; also Wood, Negligence, 2d ed. §§ 753–764.

The authority of the legislature to define what shall or shall not constitute a nuisance is subject to constitutional limitations. If an act on the part of a municipality is in the nature of a nuisance it may be subject to the constitutional provision that private property cannot be taken or damaged for public use without compensation regardless of

what the legislature may have said regarding nuisances. Section 14 of the North Dakota Constitution guarantees compensation to the owner of private property taken or damaged for public use. Mayer v. Studer & M. Co. 66 ND 190, 262 NW 925; Gram Constr. Co. v. Minneapolis, St. P. & S. Ste. M. R. Co. 36 ND 164, 161 NW 732; 20 RCL 388. See also McLaughlin v. Hope, 107 Ark 442, 155 SW 910, 47 LRA(NS) 137; Jacobs v. Seattle, 93 Wash 171, 160 P 299, LRA 1917B 329, supra; Riggs v. Springfield, 344 Mo 420, 126 SW(2d) 1144, 122 ALR 1496; Platt Bros. & Co. v. Waterbury, 72 Conn 531, 45 A 154, 48 LRA 691, 77 Am St Rep 335.

The law applicable to the recovery for property damaged under the provisions of § 14 of the Constitution is not the law of nuisances. Actions for damages founded on such constitutional provisions are closely related to the law of eminent domain, and recoveries are permitted upon the theory of implied contract. Mayer v. Studer & M. Co. supra; King v. Stark County, 67 ND 260, 271 NW 771; Jacobson v. State, 68 ND 259, 278 NW 652. Each theory of recovery has its own consequent rules and statutes by which are determined such incidental questions as the accrual of the cause of action, the applicable statute of limitations, the admissibility of evidence and the measure of damages.

Many states have no legislative declaration regarding nuisances comparable to our § 7231, ND Comp. Laws 1913. Many state Constitutions are silent with reference to the damaging of private property for public use. This accounts for much of the seeming conflict of authority on the question of the right to recover consequential damages for injury to property resulting from acts of a municipality done in accordance with or pursuant to legislative authority. The legislature has power to define and declare what are and what are not nuisances. In this state the legislature has seen fit to declare that an act which it has expressly authorized shall not be deemed a nuisance. It is the duty of the courts to respect that declaration to the limit of the legislature's constitutional power. On the other hand, it is not to be presumed that the legislature intended that the acts so authorized might be performed in an unreasonable or improper manner. It is said in Morse v. Worcester, 139 Mass 389, 2 NE 694, that "when the legislature authorizes

a city or town to construct sewers, or to use a natural stream as a sewer, it is not to be assumed that it intends to authorize the city or town so to construct its sewers or so to use the stream as to create a nuisance, unless this is the necessary result of the powers granted. On the contrary, if it is practicable to do the work authorized without creating a nuisance, it is to be presumed that the legislature intended that it should be so done."

In Pine City v. Munch, 42 Minn 342, 44 NW 197, 6 LRA 763, the court says: "If the legislature expressly authorizes an act which must inevitably result in public injury, what would otherwise be a nuisance may be said to be legalized; but if they authorized an erection which does not necessarily produce such a result, but such. result flows from the manner of construction or operation, the legislative license is no defense. In order to justify a nuisance by legislative authority, it must be the natural and probable result of the act authorized, so that it may fairly be said to be covered by the legislation conferring the power."

The immunity conferred by the legislature must be strictly construed. The protection of the statute is lost if the authority given is exceeded or is exercised in a negligent or unreasonable manner. 39 Am Jur 485, Nuisances, § 207.

The trial court found "That the defendant, in the use and operation of its sewer system during the period aforesaid, cast into the said Heart River an excessive amount of sewage matter, consisting of sewage from toilets and washrooms of residences, office buildings and other buildings, and sewage from other sources in said city, and industrial sewage and waste from creameries and other industrial plants in the city of Dickinson, together with other sewage and waste with improper and insufficient treatment thereof, thereby placing in the stream of said river considerable waste matter, offal and effluent from the sewerage system of said city, including human offal and waste containing germs and bacterial elements from the human body, all of which matter is allowed to and does pollute the stream and stream bed of said Heart River; and such waste matter, effluent and offal from the Defendant's sewer system does at the point of emission therefrom into the said Heart River cause and create and generate gases, stench, and dimin-

ishes the oxygen content of the water creating and causing nauseating and offensive odors and stenches." With respect to the amount of damages suffered by the plaintiff, the court found "that by reason of the acts of the defendant aforesaid, the plaintiff has been damaged in the sum of eleven hundred fifty-two dollars ($1,152) during the period of six years prior to the commencement of such action, or prior to March 24, 1939, which sum represents the diminution in rental value of the said premises caused by the acts of the Defendant aforesaid."

We have given exhaustive study to the record. It amply sustains the findings of the trial court with respect to the conduct of the defendant and the damages suffered by the plaintiff. There is no specific finding of negligence but the court does find that the defendant cast into the Heart River an excessive amount of sewage that was improperly and insufficiently treated with the result that the rental value of plaintiff's property was decreased in the sum of $1,152. The ultimate question, therefore, is whether the legislative immunity conferred upon cities by authorizing them to empty their sewage into rivers (§ 3697, ND Comp. Laws 1913) and by further providing that nothing done or maintained under express authority of statute can be deemed a nuisance (§ 7231, ND Comp. Laws 1913), protects the defendant against responding in damages under the facts disclosed by this record. It is clearly the rule that the mere naked grant of power to a municipality to do acts which may result in injury if improperly or negligently done does not immunize the municipality against all claims of damages resulting from the exercise of the power. The legislature by its provision with regard to nuisances did not intend to sanction or legalize acts of a municipality resulting in private damage where that damage was not an inherent result of the act performed but flowed from the manner of performance.

In this case, the city had legislative authority to empty its sewage into the river but that authority was limited by the duty resting upon the city to exercise its authority in a reasonable manner and to take all reasonable precautions against damaging private property. By casting its sewage into the river with improper and insufficient treatment for a long period of time, the city was remiss in its duty and it may not now rely upon its legislative immunity to protect it from respond-

ing in damages. The issue as to the amount of damages was presented extensively and thoroughly to the trial court. He confined his award to the diminution of the rental value of the premises during the six year period prior to the commencement of the action. The record clearly shows that the sum awarded was reasonable and that the damages were the direct result of the manner in which the defendant operated its sewage disposal system.

Affirmed.

BURKE and NUESSLE, JJ., concur.

CHRISTIANSON, J. (concurring specially). I concur in an affirmance of the judgment. The facts alleged in the complaint, established by the evidence and found by the court, clearly entitle plaintiff to a judgment in at least the amount awarded by the trial court.

The complaint alleges that the plaintiff is the owner and occupant, and for more than six years last past has been the owner, of certain real property, namely a hotel, in the city of Dickinson; that the defendant in the use and operation of its sewer system constructed a sewer outlet on the Heart River located not to exceed 200 yards from plaintiff's property; that in the use and operation of such system the defendant has cast into the river an excessive amount of sewage matter with improper and insufficient treatment, which matter has been allowed to pollute the stream bed of the Heart River in such manner as to cause nauseating and offensive odors and stenches which have made it impossible for people to sleep in said building and that as a result of the action of the defendant in the operation of such sewer system plaintiff has been damaged in her business and in the rental value of her said property in the sum of $4,000.

The complaint further alleges that the plaintiff has no plain, speedy and adequate remedy at law, and suffers and will continue to suffer, great and irreparable damage unless the defendant be enjoined from using the Heart River for the discharge of excessive quantities of sewage and other waste matter without treating or disposing of the same in such manner as to render the same inoffensive and unobjectionable; that the acts and conduct of the defendant in its said practice is a public nuisance in that it annoys and injures the comfort, repose,

health, and safety of a certain number of persons, to wit—all persons situated in the vicinity of Dickinson, and that such conditions offend public decency and render life and the use of property uncomfortable and endangers the public health.

The prayer for judgment is for a permanent injunction against the discharge of the sewage until the defendant has erected and put into use a disposal plant that will properly treat such sewage and render it inoffensive and that the plaintiff have damages in the sum of $4,000 to compensate her for the loss which she has sustained.

This action was instituted in March, 1939, and was tried in December, 1939. In the answer it was alleged that prior to the commencement of the action "the defendant city had passed an Ordinance providing for the construction and equipment of a sewage disposal plant at a cost of approximately $129,000.00; that said sewage disposal plant will be constructed according to the latest improved methods . . . and have a capacity large enough to properly treat the sewage from a much larger city than that of the Defendant; that the plans and specifications of said proposed sewage disposal plant have been duly approved by the State Health Department; that contract has been let for the construction of said sewage disposal plant and that work has been started on construction of the same; that said plant will be completed the first part of November, 1939."

The evidence adduced was to the effect that, interim the commencement of the action and the trial, the city had constructed a modern and efficient sewage disposal plant and that such plant had been, or was about to be, put into operation; and the demand for injunctive relief was no longer pressed. The court made findings of fact in favor of the plaintiff upon all questions relating to the injuries sustained by the plaintiff's hotel property, and found that plaintiff had been damaged in the amount of $1,152, and ordered judgment for the plaintiff in that amount. The court further concluded that the defendant having built a modern sewage disposal plant and thus terminated the condition which had given rise to the injuries to the plaintiff, the plaintiff was not entitled to an injunction. Judgment was entered in accordance with such findings, and the defendant city has appealed.

The evidence in the case shows that the city of Dickinson estab-

lished its sewer system in 1907 or 1908. About the same time it constructed a septic tank at the place referred to in plaintiff's complaint. Originally only the sewage from the "north side" of Dickinson went into the septic tank and the sewage from the "south side" of the city went into the river at a different point and did not come into the septic tank at all. About 1930 a second septic tank was constructed adjacent to the first one. This tank was considerably larger than the tank first constructed and from that time on the sewage from the "south side" was taken into the septic tanks so that thereafter the sewage from the entire city came through the septic tanks.

The city engineer (having been called as a witness for the defendant city) testified that originally sludge-drying or contact beds (which apparently are a proper if not an indispensable part of a "septic tank and contact bed system" for sewage purification—1 Farnham, Waters, pp. 626–628) had been constructed adjacent to the tanks; but that these beds had been washed out by flood waters and that in recent years the sludge pumped from the tanks has been released into the river. He further testified that offensive and noxious odors resulted from the sewage discharged from the septic tanks; that such odors were caused by hydrogen-sulphide gas, and that such gas was generated by bacterial action upon organic matter,—"solids from the sewage,"—taking "place in the bottom of the river."

The city engineer further testified that the sewage disposal plant that the city had constructed after the commencement of the action had, and in his opinion would, "remedy the situation as to the bad odor."

The plaintiff is the owner of a hotel property located about 540 feet from the point where the discharge from the septic tanks goes into the river. Plaintiff's hotel is nearer to such outlet than any other building in the city and is about 400 feet from the river. The evidence shows, without the slightest doubt, that a very serious condition has arisen as a result of the discharge of the sewage into the river and that such condition has existed during all the times involved in this action. The testimony of all the witnesses, both those of the plaintiff and of the defendant, is to the effect that there was generated a vile odor and stench from the sewage that was dumped into the river from the septic tanks. One of the witnesses who had been a guest at the hotel for a

long time testified that during the summer months "you could not leave windows open;" that you "would wake up with an awfully dry mouth and a dry feeling through your system and you cannot breathe very easily and also if you eat you cannot keep your appetite." Another witness testified that the odor was very sickening and that at times it gets right down into your lungs and that you would wake up with a dry feeling. A witness testified that the smell was "awfully sickening" and that it made her half sick all the time she was there and that it gave her headaches. Other witnesses testified that even though the windows were closed, "the odor would get into the rooms and stick there;" that the odor was so bad that you could not sleep; that it would get into the throat and interfere with breathing; that it was worse in the night than in the daytime; that guests would come for one meal and refuse to stay because of the bad odor. One witness testified that the odor was very sickening; that it made her dizzy. Another witness testified that it was "awfully unpleasant so that you wanted to get away from there." The witnesses called by the defendant stated that the condition was very bad. One witness called by the defendant who operates a hotel on the main street of the city, many blocks from the river, testified that at times during the summer when the wind blew from the river the odor was so bad and sickening at his place of business that guests went on rather than stay over night.

The testimony shows that interim the construction of the septic tanks and the institution of this action, the city has grown in size. The population has increased considerably, and many additional buildings have been constructed and connected with the sewers.

A chemist who was called as a witness for the plaintiff testified, without objection, that the hydrogen-sulphide gas, which the city engineer said was the source of the noxious odor, is about 17 per cent heavier than air; that in water it has a disagreeable taste, and that when inhaled it causes nausea; that it is poisonous and will cause headaches if inhaled in sufficient quantities. Evidence was adduced that the rental or usable value of plaintiff's hotel property had depreciated some $40 or $50 per month during the six years preceding the commencement of this action as a result of the gas and noxious odors caused by the sewage.

There was no evidence and no attempt to introduce any evidence showing any damages resulting from personal discomfort, inconvenience or illness. The evidence adduced was restricted solely to the injury to the hotel property and the amount to which the rental or usable value of the property had depreciated during the six year period as a result of the discharge of the sewage.

The evidence in this case establishes beyond any question that the vile and noxious odors arising from the sewage constituted a continual annoyance, seriously interfered with the use of plaintiff's property, and depreciated the rental or usable value thereof in an amount at least as great as that which the court found. The evidence, also, shows that the injury caused to the plaintiff is one not shared by the people generally. Because of the location of plaintiff's property it was injured to an extent and in a manner not shared by other property.

The defendant contends that even though the facts are as found by the trial court, the plaintiff is not entitled to recover, because, says the defendant, it was authorized by the laws of this state to do what it did, and consequently no right of action arose against it. The laws which the defendant claims exempt it from liability are §§ 3697 and 7231, Comp. Laws 1913. Section 3697 provides that a "city council shall have power to establish and maintain at any time a general system of sewerage for the city, in such manner and under such regulations as the council shall deem expedient," and "that any city may empty or discharge its sewerage into any river." Section 7231 provides, "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." It is contended that inasmuch as the city had statutory authority to empty and discharge its sewerage into the Heart River, any pollution of the river or any offensive or noxious odors that may have resulted cannot be deemed a nuisance, and that the city may not be held in damages for any injury that may have been caused by the sewerage discharged into the river.

In my opinion the contention is untenable. Section 3697, supra, does not confer upon a city unlimited and unrestricted authority to empty or discharge sewage into a river without regard to the rights of others. It is a permissive statute, conferring a general power. It does not specify the manner in which the sewer shall be constructed

or the sewage treated. If the Legislature intended there should be no limit upon the right of a city to discharge sewage into a river, then it authorized the pollution of waters without limit and without regard to consequences. Leaving on one side all question as to power, it should not be presumed that the Legislature had any such intention unless it used emphatic and definite language to express it.

The rule is well established that a statute authorizing a city to discharge sewage into a stream is accompanied with an implied qualification that there is no authority to invade or violate the legal rights of others. Woodruff v. North Bloomfield Gravel Min. Co. (CC) 9 Sawy 441, 18 F 753, 771; Sammons v. Gloversville, 175 NY 346, 67 NE 622; Seifert v. Brooklyn, 101 NY 136, 4 NE 321, 54 Am Rep 672; Cogswell v. New York, N. H. & H. R. Co. 103 NY 10, 8 NE 537, 57 Am Rep 701; Morse v. Worcester, 139 Mass 389, 2 NE 694; 46 CJ 675; Joyce, Nuisances, § 289; 1 Farnham, Waters, pp. 628–633; Winchell v. Waukesha, 110 Wis 101, 85 NW 668; 39 Am Jur pp. 483– 486, Nuisances, 21 Am & Eng Enc Law, 2d ed. pp. 736, 737; 8 Enc US Sup Ct Rep pp. 938, 939.

"In accordance with the rule that the legislature will not be presumed to have authorized a nuisance, all statutory authority will be strictly construed so as to effect that result. Thus, mere general authority to establish a sewer system will not confer the right to turn the sewage into a stream so as to cause a nuisance." 1 Farnham, Waters, p. 633.

"Mere permission to cast sewage into a stream does not include authority to create a nuisance, . . . for it is not conceivable that the legislature will command or directly permit the creation of a public nuisance." 1 Farnham, Waters, p. 635.

"Legislative authority of a character to justify conduct that in the judicial view would constitute a nuisance must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury. It will not be presumed that the legislature intended to authorize the creation of a nuisance, but the presumption is to the contrary, unless the offen-

sive conduct is the natural and necessary result of an exercise of the power conferred. . . .

"Ordinarily, a statute or constitutional provision which authorizes a thing to be done which can be done without creating a nuisance will not be deemed to authorize a nuisance. And where the use and enjoyment of a legislative grant does not necessarily and naturally create a nuisance, but the nuisance results from the method of the use and enjoyment, the grant constitutes no defense. . . .

"If the authority given to make a particular use of land is, in the strict sense of law, permissive merely, and not imperative, the legislature must be held to have intended that the use sanctioned is not to be in prejudice of the common-law right of others, and the authorization will not relieve from liability for a nuisance. . . .

"A license or statute permitting the acts or things complained of as a nuisance must be strictly followed in order to prevent such acts or things from becoming a public nuisance. The protection of the statute is lost if the authority given is exceeded or is exercised in a negligent, careless, or unreasonable manner, or if works or structures authorized by it are placed without regard to the rights of others." 39 Am Jur pp. 483–486, Nuisances, § 206.

. In Sammons v. Gloversville, 175 NY 346, 67 NE 622, supra, the legislature had empowered the city to construct sewers and to maintain them so as to discharge into a stream known as "Cayadutta Creek." In construing the meaning and effect of this statute, the New York Court of Appeals said: "The common council is empowered to construct sewers, and to maintain them so as to discharge into the stream known as 'Cayadutta Creek.' This is a permission, and not a direction; and a legislative permission neither implies a right to appropriate property, without compensation, nor confers a license to commit a nuisance. . . . We think that the legislative intent was that the discretion of the municipal authorities in maintaining a system of sewage should be exercised in conformity with private rights, and, if their destruction be involved, that in such a case payment must be made."

In Morse v. Worcester, 139 Mass 389, 2 NE 694, supra, suit was brought to abate a nuisance, alleged to have been created by the discharge of sewage into a stream by the city of Worcester. There was

a statute authorizing the city to "use and appropriate" certain brooks "so far as they shall adjudge necessary for purposes of sewerage." In that case, as here, it was contended that the statutory authorization was a complete defense. In disposing of that contention, the Supreme Judicial Court of Massachusetts said, in part:

"When the legislature authorizes a city or town to construct sewers, or to use a natural stream as a sewer, it is not to be assumed that it intends to authorize the city or town so to construct its sewers or so to use the stream as to create a nuisance, unless this is the natural result of the powers granted. On the contrary, if it is practicable to do the work authorized without creating a nuisance, it is to be presumed that the legislature intended that it should be so done. . . .

"In the case at bar the legislature authorized the city of Worcester to use Mill brook as a sewer. By necessary implication the statute authorized it to empty its sewage into Blackstone river. But we cannot presume that it was the intention of the legislature to exempt the city from the obligation to use due care in the construction and management of its works, so as not to cause any unnecessary injurious consequences to the rights of others. If it is practicable to use any methods of constructing the sewer, and as a part of the construction of purifying the sewage at its mouth, at an expense which is reasonable, having regard to the nature of the work, and the magnitude and importance of the interests involved, it is the duty of the city to adopt such methods."

In Winchell v. Waukesha, 110 Wis 101, 85 NW 668, supra, the Supreme Court of Wisconsin said:

"The authority granted to municipalities is to construct sewers, but subject to the general legal restrictions resting upon such corporations forbidding invasion of private rights by creation of nuisance or otherwise. . . .

"It is not probable that the legislature has wittingly authorized the defilement, and almost destruction, of our streams, to enable such trifling measure of economy to municipalities. The great weight of authority, American and English, supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such

nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual."

"A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury." 46 CJ 674.

The pollution of the river and the offensive and noxious odors which damaged plaintiff's property were not the necessary result of the discharge of sewage into the river. The evidence adduced by the defendant discloses that it was wholly unnecessary to pollute the stream and to create such offensive and noxious odors; that this could have been obviated by proper treatment of the sewage. The testimony of defendant's engineer shows that the offensive and noxious gas and odors have been eliminated as a result of the treatment of the sewage in the sewage disposal plant.

Section 7231, supra, does not justify the wrongful acts pleaded and proven in this case. That section negatives the idea that it affords justification for acts that otherwise would constitute a nuisance, where such justification is claimed under a general and permissive statute. It is only something that is done or maintained "under the *express* authority of a statute" that is exempted. Section 3697, supra, did not authorize the defendant city to pollute the river, and create and maintain the conditions that generated the offensive and noxious odors that resulted in injury to the plaintiff.

"It is one of the conditions always implied by the law, that one's rights, whether granted or regulated by the legislature, shall be exercised with due regard to the rights of others—so exercised as not to injure another; and certainly no authority to encroach upon the vested rights of others can be inferred without being in express terms clearly authorized; and this principle is expressly recognized in the statutory limitation on the definition of a nuisance cited. This *express* provision excludes the idea that the legislature contemplated any other limitation

than such as is authorized in 'express' terms. It is as potent in the form expressed, as if the statute had said, in express terms, that there should be no other limitation." Woodruff v. North Bloomfield Gravel Min. Co. (CC) 9 Sawy 441, 18 F at p. 771.

The Supreme Court of the United States has said: "The Acts that a legislature may authorize, which, without such authorization, would constitute nuisances, are those which affect public highways or public streams, or matters in which the public have an interest and over which the public have control. The legislative authorization exempts only from liability to suits, civil or criminal, at the instance of the state; it does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large." Baltimore & P. R. Co. v. Fifth Baptist Church, 108 US 317, 27 L ed 739, 2 S Ct 719.

Section 7231, supra, did not create a new legal principle. It merely adopted in statutory form a principle then well established. The section was embodied in the report of the Field Commission of 1865, and was enacted by the legislature of the Territory of Dakota, taking effect January 12th, 1866. Laws of Dakota, 1865–66, Civil Code, § 1952. Subsequently the section was adopted in identical language in a number of states, including California, Montana and Oklahoma. The supreme courts in those states have held that this section cannot be pleaded in justification of acts which under the general rules of law constitute a nuisance, where such acts are performed under authority of general and permissive statutes. Lennon v. Butte, 67 Mont 101, 214 P 1101; Hassel v. San Francisco, 11 Cal(2d) 168, 78 P(2d) 1021; People v. Glenn-Colusa Irrig. Dist. 127 Cal App 30, 15 P(2d) 549; People v. Reedley, 66 Cal App 409, 226 P 408; Woodruff v. North Bloomfield Min. Co. (CC) 9 Sawy 441, 18 F 753, supra; Jennings v. Pappenfus, 129 Okla 85, 263 P 456.

In Lennon v. Butte, 67 Mont 101, 214 P 1101, supra, suit was brought against the city to recover damages claimed to have resulted from the collection and disposal of garbage. It was asserted that as a result of the hauling of the garbage and the burning of the same in an incinerator a short distance from plaintiff's house, the air became contaminated with noxious odors and smells, and that a large number

of flies and insects bred and gathered in that vicinity. In that case, as here, the defendant city contended that it was not liable in damages; that it had authority under the statute to regulate the removal and disposal of garbage and that the statute, identical in terms with § 7231, supra, exempted it from liability for maintaining a nuisance. The supreme court of Montana held that the acts of the defendant city constituted a nuisance and that the statute constituted no defense for the city. In the opinion in that case the court said:

"It is urged that . . . the acts of the city in making deposition of the ashes and garbage, as alleged, were done under express authority of law, and therefore it could not be held that it was maintaining a nuisance, by reason of the provisions of § 8645, Revised Codes of 1921, which read, 'Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.' . . .

"When the use and enjoyment of a legislative grant does not necessarily and naturally create a nuisance, but the nuisance results from the method of the use and enjoyment, the grant constitutes no defense. 20 RCL 503. The fact that § 5039, supra, gives a city the power to regulate the removal and deposition of garbage and offensive matter does not give it the right to so deposit the same as to create a condition which would be injurious to the health, or indecent, or offensive to the senses, and interfere with the comfortable enjoyment of life and property. Such a result would not naturally or necessarily follow from the grant of such power."

In Hassel v. San Francisco, 11 Cal(2d) 168, 78 P(2d) 1021, supra, action was brought to enjoin the city and county of San Francisco from constructing a public convenience station. The statute conferred upon the Park Commission exclusive control and management of parks, including the exclusive right to erect and superintend the erection of buildings. In that case, as here, the defendant city contended that this statutory authority, coupled with the provisions of a statute identical with § 7231, supra, constituted authority to construct the station. The court held that the statute constituted no defense—that the authority given to the city might "not be exercised in such manner as to create a nuisance."

In Woodruff v. North Bloomfield Gravel Min. Co. (CC) 9 Sawy

441, 18 F 753, supra, the statute was invoked as justification for putting certain debris into a stream. The court rejected the contention and held that the statute furnished no defense.

Jennings v. Pappenfus, 129 Okla 85, 263 P 456, supra, involved a septic tank into which the sewers of the town were discharged. It was charged that the sewers and septic tank as maintained constituted a nuisance, and action was brought to enjoin the maintenance thereof and to compel an abatement of the same. The town contended that the sewer system was maintained under statutory authority and that under a statute, identical with § 7231, supra, the acts of the town could not, and did not, constitute a nuisance. The supreme court of Oklahoma denied this contention and sustained a judgment against the town enjoining continuance of the nuisance.

In People v. Reedley, 66 Cal App 409, 226 P 408, supra, action was brought to abate a public nuisance alleged to result from the discharge by the city of Reedley of sewage into a river. There, as here, the statutory provision, identical in language with § 7231, supra, was invoked as a defense. In disposing of this contention, the court said: "We do not see that this section alters the situation in any particular. It certainly does not authorize anyone to discharge injurious matter into the waters of a public stream or empower the state board of health to issue a permit which would authorize any person to create a nuisance or continue a nuisance after being created."

The decision of the supreme court of California in Pasadena v. Stimson, 91 Cal 238, 27 P 604, does not announce a rule contrary to the California decisions cited above. That was a proceeding to condemn right-of-way for an outfall sewer for the city of Pasadena. There was a motion for a nonsuit. One of the grounds of such motion was, "that the proposed sewer will be a nuisance affecting injuriously the health of the people of Alhambra." In considering this contention the court said, in part: "There was no evidence that the sewer, as it was proposed to construct it, would be more of a nuisance than any sewer would be. So far as appears, the sewer was well planned, according to current sanitary views. Certainly there was nothing tending to show that it was an improper kind of sewer, and therefore it could not be regarded as a nuisance per se. A sewer in the neighborhood of dwell-

ings may be an evil, but it is evidence that the legislature regards it as a necessary evil, since it allows private property to be taken for the construction of sewers. Sewers are in fact a necessary evil; but when they are planned and constructed with reasonable regard to the results of sanitary teachings they are authorized by statute, and 'nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.' Civil Code, § 3482. In short, the plaintiff, being a city with sewage to dispose of, and having a sewer farm to which it has apparently a right to conduct it, has necessarily the right to construct such a sewer as the statute (Code Civ. Proc. § 1238) contemplates, and such a sewer cannot be a nuisance in the strict sense of the term. That it may occasion loss or injury to others for which they will be entitled to compensation is a different proposition, which will be considered in another connection."

In a subsequent paragraph the court said: "The court was so far right, therefore, in holding, as it did in effect, that the damage to the defendants could not be estimated upon the assumption that the sewer, when constructed, would cause greater discomfort or inconvenience than the sewer described in the complaint and in the decree. The plaintiff, in order to justify its future proceedings under any decree of condemnation in this suit, must construct its sewer in accordance with the terms of the decree, and it must operate it in a careful, skillful, and proper manner. If it does not, it will be liable for damages for its neglect in these particulars, and the persons damaged, though parties to this proceeding, will not be concluded by the damages allowed therein."

The facts alleged in the complaint and established by the evidence in this case show beyond all question that the sewage discharged by the defendant resulted in pollution of the air with poisonous gas and noxious odors and that as a result plaintiff's property was made less valuable and that the rental and usable value thereof was greatly depreciated. The impregnation of the atmosphere with the gas and noxious odors that passed over plaintiff's property was an invasion of legal rights incident to the land itself and essential to its beneficial enjoyment. Moody v. Saratoga Springs, 17 App Div 207, 45 NYS 365; Wood, Nuisances, 2d ed. p. 868; Ingmundson v. Midland Continental

R. Co. 42 ND 455, 173 NW 752, 6 ALR 714; Donaldson v. Bismarck, post, 3 NW(2d) 808.

These acts of the defendant, which resulted in damaging plaintiff's property, were not authorized by an express statute; nor were they authorized by necessary implication from any general authority conferred upon the city. They were forbidden not only by our statutes but by the Constitution.

BURR, Ch. J., I agree with the foregoing statement.