Taft, J.
This case is a sequel to City of Akron v. Chapman, 160 Ohio St., 382, 116 N. E. (2d), 697, 42 A. L. R. (2d), 1140, in which, as the opinion there points out, there was “no claim of nuisance.” Although there is such a claim in the instant case, we are not confronted with and therefore express no opinion on the question whether a municipal ordinance can prohibit the operation of any junk yard in a residential neighborhood and thereby in effect make such operation in such a neighborhood a nuisance regardless of how well it is conducted.
*211 The Court of Appeals, in the journal entry setting forth its judgment, gave no reason for dismissing the petition. However, in its opinion it stated (see paragraph four of syllabus of Andrews v. Board of Liquor Control, 164 Ohio St., 275, 131 N. E. [2d], 390) that “the evidence * * # indicates that the maintenance and operation of the junk yard * * * by defendant is claimed to be distasteful, unsightly, and an annoyance, to the persons living close by said junk yard, but its effect, even as claimed by witnesses for plaintiff, does not attain the stature of a public nuisance.” (Emphasis added.)
The city relies upon Section 715.44, Revised Code, as conferring upon it the right to maintain this action. That statute reads in part :
“A municipal corporation may:
“(A) Abate any nuisance and prosecute in any court of competent jurisdiction, any person who creates, continues, contributes to, or suffers such nuisance to exist * * *.”
The Court of Appeals in its opinion stated that “the statute # * # must be interpreted as though” the word “public” appeared before the word “nuisance.” Although this court has never before had occasion to consider this problem, a similar interpretation was given to this statute many years ago in Whitcomb v. City of Springfield (1888), 3 C. C., 244, 2 C. D., 138. Not only because of the reasons there advanced for that interpretation but also because of the many years of legislative acquiescence therein, we are inclined to give this statute the same interpretation.
Since the Court of Appeals heard the cause as an appeal' on questions of law and fact, it had the power and right to substitute its judgment on the facts for that of the Common Pleas Court. The city did not request the Court of Appeals to make any finding of facts and neither the judgment nor the opinion of the Court of Appeals indicates what facts it found.
If the Court of Appeals was correct in its holding that ordinance 100-1956 cannot be enforced against defendant, then we cannot conclude that reasonable minds could not have found facts from the evidence in the record of this case that would support a valid legal conclusion that defendant’s operation of his junk-yard business does not constitute a public nuisance; and *212 therefore, since we do not weigh evidence, we could not reverse the judgment of the Court of Appeals merely for failing to find that defendant’s operation of his junk yard represents in any respect a public nuisance.
However, it is either admitted by defendant or the evidence requires a finding as a matter of law (1) that defendant does not “maintain an open, unoccupied space 10 feet in width on each side of * * * ground” used for his junk yard or have a rear yard line at least 10 feet inside his rear property line, and does not have a solid board fence on each resulting setback side and rear yard line, (2) that especially during the summer defendant works in his junk yard after 6 p. m. but not after dark and (3) that defendant works in his junk yard on Sunday but that defendant conscientiously observes Saturday as the Sabbath and abstains thereon from doing on Saturday the things prohibited on Sunday by Section 3773.24, Revised Code.
On these facts, questions arise as to the validity of the provisions of ordinance 100-1956, requiring side and rear setback lines and fences thereon and prohibiting night and Sunday operations.
Even if we should assume that a municipality could by ordinance exclude an existing junk yard from a residential neighborhood as an offensive trade likely to create nuisances,[1] it does not follow that any and every regulation of a junk yard by ordinance would be valid. For example, even if a legislative requirement of a solid fence around a junk yard in a residential neighborhood might represent a valid exercise of the police power,[2] a legislative requirement that it be painted red would obviously not have any substantial relationship to the health, safety or morals of the public or even to the public welfare in its broadest scope and hence would not represent a valid exercise of the police power.
In, the instant case, defendant does have a fence around his *213 junk yard but, except perhaps in the front, it is not located on the setback lines specified in the ordinance. The effect of the ordinance is not merely to require a dismantling of the existing fence but also to prevent use by defendant of a substantial portion of the land used in defendant’s junk-yard business before enactment of the ordinance. The city did not determine by ordinance that the operation of a junk-yard business in a residential neighborhood is always a nuisance[3] and the judgment of the Court of Appeals has determined that the operation of this particular yard was not a public nuisance. Cf. Village of Pine City v. Munch, 42 Minn., 342, 44 N. W., 197, 6 L. R. A., 763. Hence, our decision in City of Akron v. Chapman, supra (160 Ohio St., 382), required the determination made by the Court of Appeals that the “portion” of ordinance 100-1956 “pertaining to setback lines” was “unenforceable as applied to” defendant.
Since the portion of the ordinance with respect to fencing is obviously not separable from the portion relating to setback lines, the portion with respect to fencing cannot be enforced against defendant.[4]
In determining that the portion of ordinance 100-1956 requiring defendant to cease operations between 6 p. m. and 7 a. m. is unconstitutional, the Court of Appeals relied upon City of Cincinnati v. Correll, 141 Ohio St., 535, 49 N. E. (2d), 412. That case held that a municipal ordinance limiting the hours during which a barber shop might remain open for business did not represent a valid exercise of the police power because it bore no real and substantial relation to the health, safety, morals or general welfare of the public.
However, not only did that ordinance prevent operation of a barber shop anywhere within the city during certain hours (not merely as here in a residential neighborhood) but there are also very substantial differences between the operation of a barber shop and the operation of a junk yard.
*214 The latter operation, unlike the former, necessarily involves noise that will disturb those nearby. This court has recognized the desirability of “periods of rest from ordinary pursuits” as “requisite to the well-being, morally and physically, of a people” and as thus justifying legislative enactments providing therefor, such as the Sunday laws. State v. Powell, 58 Ohio St., 324, 340, 50 N. E., 900, 901, 41 L. R. A., 854, 856, State v. Kidd, 167 Ohio St., 521, 524, 150 N. E. (2d), 413, 416.
Where a noisy operation such as a junk yard is conducted in a residential neighborhood, it is certainly reasonable to require its cessation for substantial periods. The requirement of such, cessation certainly would bear a substantial relationship to the health of those in the neighborhood and hence to the public health and welfare. Cf. People v. Rubenfeld, 254 N. Y., 245, 172 N. E., 485. Although there are undoubtedly limits beyond which legislative provisions for relief to the public from noisy and disagreeable operations that do not amount to nuisances may not extend without becoming unreasonable, this ordinance has not gone beyond any such limits. It only prevents the operation of a junk yard between 6 p. m. and 7 a. m. and on Sundays and then only if such junk yard is located in a residential neighborhood. As stated in Moses v. State, 58 Ind., 185, 187, “there are times and places for all the pursuits of men, when and wherein they may conduct their business, without any serious injury to the rights of one another.”
As to the requirement that the junk yard be closed during the night, still other reasons have been recognized for sustaining the validity of such legislative provisions. Hyman v. Boldrick, Judge (1913), 153 Ky., 77, 154 S. W., 369, 44 L. R. A. (N. S.), 1039.
The Court of Appeals also held that the portion of ordinance 100-1956 “prohibiting working on Sunday” is “invalid as applied to defendant” for the additional reason that “it does not exempt those persons falling within the exceptions contained in” Section 3773.24, Revised Code, and hence “is * # * in conflict with state law.”
So far as pertinent that statute (Recodification Act of 1953) read:
“No person * * * over 14 * # * shall engage in common labor *215 or open or cause to be opened, a building or place for transaction of business # * # on Sunday * * *
“This section * * * does not extend to persons who conscientiously observe the seventh day of the week as the Sabbath, and abstain thereon from doing things prohibited on Sunday. ’ ’
If, as did the ordinance involved in City of Canton v. Nist, 9 Ohio St., 439, ordinance 100-1956 had, to use the words of the journal entry and opinion of the Court of Appeals, a “portion * * # prohibiting * * * working on Sunday, ’ ’ that portion would be “invalid as applied to defendant” because of its conflict with the foregoing statute. However, the ordinance provisions do not prohibit defendant from working on Sunday. They merely require that his “junk yard * * * in * # * [a] residential use district # * * cease operations * * * all day on Sunday.” Notwithstanding the ordinance, defendant can on Sunday work elsewhere, engage in common labor elsewhere, open a place for the transaction of some other business elsewhere and even operate a junk yard elsewhere.
The statute requires the defendant to rest one day a week but, because he observes the Sabbath on another day, permits him to take that rest on that other day and avoid it on Sunday. The ordinance does not require defendant to rest on Sunday. It is designed to provide relief to the public in a residential neighborhood on Sunday from the noisy and disagreeable operations of a junk yard. It may incidentally interfere with defendant’s statutory right to avoid rest on Sunday. However, the same can be said with respect to any zoning ordinance. Thus, although, if there had been no nonconforming use by defendant, this zoning ordinance would prevent this defendant from doing business on any day including Sunday in this residential district, it could not be contended with reason that the ordinance was thereby invalid as to defendant because it interfered with defendant’s right to work or to avoid resting on Sunday.
Since most people do not come within the above-quoted exception in Section 3773.24, Revised Code, there is nothing unreasonable in the ordinance specifying Sunday instead of Saturday as the day on which there shall be relief to the public in a *216 residential neighborhood from the noisy and disagreeable operations of a junk yard.
The city further contends in effect that the nonconforming use protected by the Akron zoning ordinance in the instant case ceased when Chapman moved out.
Admittedly, defendant did not purchase, acquire, or in any way succeed to any part of the Chapman junk-yard business, which was moved to another location in Akron where it is still operated under the same name by Chapman’s son.
This raises the question whether it is the use of these two lots in the junk-yard business or only their use in the Chapman junk-yard business that can be continued as a nonconforming use. This depends, at least initially,[5] 6 on any valid provisions of the Akron zoning ordinances with respect to nonconforming uses. Those ordinances read in part:
“Section A. The lawful use of any dwelling, building or structure and of any land or premises, as existing and lawful at the time of the passage of this ordinance, may be continued * # *
“Section G. No building or premises where a nonconforming use is voluntarily discontinued for two years or more or superseded by a use permitted in the use district in which it is located, shall again be devoted to any use prohibited in such use district.” (Emphasis added.)
In our opinion^ where, as here, a zoning ordinance provides that the lawful use of any land or premises existing at the time of its enactment may be continued as a nonconforming use, such ordinance continues the right to use land or premises in a residential use district in a business of the same kind as, although it does not represent any continuation or part of, the particular business that was being conducted on such land or premises at the time of enactment of such zoning ordinance.
To the extent that the judgment of the Court of Appeals holds invalid the provisions of ordinance 100-1956 with respect *217 to night and Sunday operations and fails to enjoin defendant from such operations, it is reversed; and the cause is remanded to the Court of Appeals for further proceedings. Otherwise, the judgment of the Court of Appeals is affirmed.

Judgment affirmed in part and reversed in part.

Zimmerman, Matthias, Bell and Peck, JJ., concur.
Herbert, J., concurs in paragraphs one through five of the syllabus and in the judgment.
Weygandt, C. J., concurs in the judgment of reversal and dissents from the judgment of affirmance.

See Finkelstein v. City of Sapulpa (1925), 106 Okla., 297, 234 P., 187; Village of Euclid v. Ambler Realty Co., 272 U. S., 365, 388, 71 L. Ed., 303, 311, 47 S. Ct., 114, 118, 54 A. L. R., 1016; Hadacheck v. Sebastian, Chief of Police, 239 U. S., 394, 60 L. Ed., 348, 36 S. Ct., 143, Ann. Cas. 1917B, 927; Reinman v. City of Little Rock, 237 U. S., 171, 59 L. Ed., 900, 35 S. Ct., 511.

See annotation 45 A. L. R. (2d), 1391, 1425 et seq.

Cf. Benjamin v. City of Columbus, 167 Ohio St., 103, 146 N. E. (2d), 854. See footnote 1.

In so holding, we do not intend to express any opinion with respect to the power of a municipality to enact an ordinance requiring the fencing of junk yards in residential neighborhoods. See footnote 2.

The syllabus and opinion of City of Akron v. Chapman, supra (160 Ohio St., 382), indicate that it is perhaps only “the right to continue to use one’s property in a lawful business * * * lawful at the time such business was established" that is the right protected by the Constitution,