2001 ND 201

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Dale William BARTH, Defendant and Appellant.**

Nos. 20010109, 20010110.

Supreme Court of North Dakota.

Dec. 20, 2001.

Allen M. Koppy, State's Attorney, Mandan, ND, for plaintiff and appellee.

Thomas M. Tuntland, Mandan, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Dale Barth appealed from judgments of conviction, entered upon a jury verdict finding him guilty of driving with a suspended license, preventing arrest, and disorderly conduct. We hold the trial court did not err in instructing the jury on the law, Barth's right to exercise peremptory challenges was not violated, and there is substantial evidence to support the jury verdict. We affirm.

I

[¶ 2] On July 18, 2000, Highway Patrol Officer Todd Ebens was on duty patrolling Highway 25 in Morton County. At about 10:20 p.m., he observed a pickup on the highway with one headlight burned out. Officer Ebens signaled the driver to stop.

When the driver pulled to the side of the road Ebens, who was about one or two car lengths behind the pickup, observed the two occupants inside the pickup "switching seats." Ebens testified he walked to the passenger side of the pickup and knocked on the window. Dale Barth rolled down the window and the officer asked him for his license and registration. Ebens testified Barth told him "to go to hell." Ebens testified he had no doubt that the person sitting in the passenger seat had been driving the pickup. He again asked the passenger to produce his driver's license and was again told in a very loud voice to go to hell. Ebens then returned to his vehicle to radio for assistance. While making that request, the other occupant of the pickup, Otto Barth, Dale's father, walked back to Ebens' vehicle and identified himself and his son. Ebens was then informed by state radio that Dale Barth's driver's license was suspended.

[¶ 3] Two Morton County deputies soon arrived at the scene to assist Ebens. The three officers walked toward the passenger side of the pickup and informed Dale Barth that he was under arrest for driving with a suspended license. When Ebens asked Barth to step out of the vehicle so he could make the arrest, Barth again told the officer to go to hell. Barth also told his father to take off. For a few minutes the officers tried to get Barth to voluntarily exit the vehicle, but he refused to cooperate and "just kept getting louder and refusing to step out of the vehicle." Ebens testified that he then "reached inside the vehicle" and "grabbed for Dale's biceps" to see if he could pull him out of the vehicle. At that point, Barth pulled back, put up his arms, and clinched his fist. Deputy Sheriff Tadd Pritchett testified that Barth said "he was not going with us and he was not going to be arrested." He also testified that when Ebens grabbed Barth's arm Barth "reached his arm back ... in a threatening manner, a resistant manner." Ebens testified he at that point felt that Barth was going to start hitting or kicking the officers and, rather than risk injury to themselves, the officers decided to use pepper spray to make the arrest.

[¶ 4] After one of the deputies sprayed pepper spray into Barth's face, the three officers together grabbed Barth and removed him from the pickup and forced him onto the ground. Barth submitted rather quickly after the pepper spray was used, but he did struggle some. Deputy Pritchett testified that Barth did not want to bring his arm back to allow the officers to handcuff him and he refused to follow the officers' commands that he straighten his legs and lie in a prone position. After the officers handcuffed Barth they placed him into a squad car and took him to the police station.

[¶ 5] Barth was charged with class B misdemeanor disorderly conduct in violation of N.D.C.C. § 12.1–31–01, class B misdemeanor driving with a suspended license in violation of N.D.C.C. § 39–06–42, and class A misdemeanor preventing arrest or discharge of other duties in violation of N.D.C.C. § 12.1–08–02. A jury found Barth guilty on all counts, judgments of conviction were entered, and Barth appealed.

## II Peremptory Challenges

[¶ 6] Barth asserts reversible error was committed when the prosecutor revealed he had not exercised any peremptory challenges but the defendant had struck four potential jurors in the exercise of his peremptory challenges. Barth asserts this disclosure "was so embarrassing that it denied him the right to an impartial jury and the right to a fair trial."

[¶ 7] Under N.D.R.Crim.P. 24 each side is entitled to exercise perempto-

ry challenges. Section 29–17–30, N.D.C.C., provides that "a peremptory challenge can be taken by either party and may be oral." A defendant's right to peremptory challenges is denied or impaired only if the defendant does not receive what state law provides. *State v. Entzi,* 2000 ND 148, ¶ 10, 615 N.W.2d 145. The trial court has broad discretion in selecting a method by which it impanels a jury, and it is enough if the chosen method permits the defendant to exercise peremptory challenges without embarrassment and does not intimidate him from exercising them. *Id.* at ¶ 12; *United States v. Anderson,* 39 F.3d 331, 344 (D.C.Cir.1994). *See also Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894) (any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of the right to make peremptory challenges must be condemned).

[¶ 8] We review the trial court's jury selection procedure using an abuse of discretion standard of review. *State v. Entzi,* 2000 ND 148, ¶ 12, 615 N.W.2d 145. If the defendant's ability to exercise peremptory challenges is denied or impaired, relief is justified without a showing of prejudice. *City of Dickinson v. Lindstrom,* 1998 ND 52, ¶ 17, 575 N.W.2d 440. The defendant, however, must show prejudice when it is alleged that technical errors or irregularities have occurred which have not resulted in the impairment or denial of the defendant's peremptory challenges. *Id.*

[¶ 9] Barth acknowledges the trial court used the prevailing practice of having the parties alternately exercise peremptory challenges by passing a sheet of paper between them and anonymously exercising their challenges. After this process was completed and each side had been given the opportunity to exercise peremptory challenges, Barth's attorney started the following colloquy:

MR. PURDON: Can we approach, Your Honor. I have a question.

(Conference at the bench.)

MR. PURDON: Mr. Koppy has indicated that he passed and I want to be square on this: You are not going to exercise any peremptories of the jurors in the box? I'm done, but I've run into in the past where they try to come back and exercise peremptories.

THE COURT: Once you pass it is over with.

MR. PURDON: Okay. Thank you.

(In Open Court.)

THE COURT: Mr. Koppy, have you exercised the desired peremptories on behalf of the State of North Dakota?

MR. KOPPY: Actually none of them, Your Honor.

THE COURT: Counsel, would you approach please.

(Conference at the bench.)

THE COURT: Did you understand my question?

MR. KOPPY: Yes. Did I exercise any—

THE COURT: Did you exercise the desired peremptory challenges?

MR. KOPPY: No.

THE COURT: Do you have other challenges you wish to exercise?

MR. KOPPY: No, I don't.

THE COURT: So you have.

MR. KOPPY: Yes.

THE COURT: Very well.

MR. PURDON: Your Honor, I would ask for a mistrial. He last indicated to the jury he hadn't struck anybody as a peremptory. I think it is prejudicial and improper and I move for a mistrial.

The trial judge denied defense counsel's motion for a declaration of a mistrial.

[¶ 10] Barth was allowed to exercise the peremptory challenges to which he was entitled by a discreet process in which the challenges were anonymous and exercised without embarrassment or intimidation. When the process was concluded, defense counsel expressed his concern that the prosecution, having passed on its peremptory challenges, might be allowed additional opportunity to exercise them. The trial judge attempted to elicit from the prosecutor that he was finished and would not seek additional opportunity for challenges. The prosecutor responded that he had not exercised any peremptory challenges, thereby revealing that the four jurors who were excused without cause had been challenged by the defendant. The incident was unfortunate. Counsel for each party must remain vigilant at all times not to comment on the other side's use of peremptory challenges, so as not to hamper the full and free exercise of that right. However, Barth has failed to demonstrate he was prejudiced by the prosecutor's comments. Barth had already been allowed to fully exercise his peremptory challenges without intimidation or embarrassment. There is no showing that the jurors who sat on this case were prejudiced against Barth or negatively impacted when they found out, after the challenge process was over, that the defense had struck potential jurors without cause.

[¶ 11] Although a process by which the remaining jurors would not know which party peremptorily challenged members of the jury panel would be beneficial to the administration of justice, such process is not required. 5 Wayne R. La-Fave, *Criminal Procedure* § 22.3(d) (2d ed. 1999). A process under which a party's peremptory strikes are disclosed to the jury does not deny the defendant a fair trial and is not grounds for reversal. *United States v. Severino*, 800 F.2d 42, 47–48 (2nd Cir.1986); *see also United States v. Ploof*, 464 F.2d 116, 118 (2nd Cir.1972) (the trial judge had discretion to require counsel to exercise challenges in the presence and hearing of veniremen rather than at side bar); *United States v. Rowe*, 435 F.2d 1298, 1299 (9th Cir.1970) (the court's ruling on peremptory challenge of a juror in front of the jury offended no statute or rule of procedure for exercising peremptory challenges). We conclude the trial court did not abuse its discretion in the method it used for impaneling the jury. Barth has failed to demonstrate prejudice to him or reversible error by the prosecutor's disclosure that defense counsel had exercised peremptory challenges of potential jurors.

### III  Jury Instructions

[¶ 12] Barth asserts the trial court committed reversible error in instructing the jury on the defense to a charge of preventing an arrest. Jury instructions must correctly and adequately inform the jury of the applicable law, and must not mislead or confuse the jury. *State v. Erickstad*, 2000 ND 202, ¶ 16, 620 N.W.2d 136. This Court reviews jury instructions as a whole to determine whether they adequately and correctly inform the jury of the applicable law, even though part of the instruction standing alone may be insufficient or erroneous. *Id.* If, when considered as a whole, a jury instruction correctly advises the jury of the law, it is sufficient even if part of it standing alone may be insufficient. *State v. Thompson*, 504 N.W.2d 838, 841 (N.D.1993).

[¶ 13] The court instructed the jury as follows:

It is a defense to prosecution for preventing arrest or discharge of other duties that the public servant was not

acting lawfully. It is no defense that the defendant mistakenly believed that the public servant was not acting lawfully. A public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully.

Barth asserts the instruction is correct except for the last sentence, which he claims was prejudicial to him:

> In this action, the lawfulness of Mr. Barth's arrest was central to the defense of illegal arrest. Informing the jury that if the officers were executing "process" in good faith and under color of law, there [sic] were deemed to be acting lawfully, was an incorrect statement of the law of the case as it was clear the officers were not executing any process. . . . . The misleading instruction affected Mr. Barth's substantial rights as the jury was told that if the police officers were doing something—executing process—they were deemed to be acting lawfully. This was, of course, central to Dale's defense and prejudiced him.

The trial court's instruction is a nearly verbatim recitation of our state statute under N.D.C.C. § 12.1–08–02(2). The sentence, "a public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully" is taken directly from the wording of the statute.

[¶ 14] Defense counsel asserts there was no "process" in this case because there was no summons being served. Counsel's interpretation of this term is far too narrow. We construe words used in a statute in their ordinary sense unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Defense counsel acknowledges that in its ordinary sense the term "process" can mean "to subject to or handle through an established usually routine set of procedures." *Merriam–Web-*

*ster's Collegiate On Line Dictionary,* www.m-w.com (2001).

[¶ 15] Under N.D.C.C. § 29–06–15(1)(a), an officer, without an arrest warrant, may arrest a person for a public offense committed or attempted to be committed in the officer's presence. Officer Ebens testified he observed Dale Barth driving the pickup on the highway. Consequently, Barth violated the law in the presence of Ebens by driving with a suspended license, and the officer was authorized to arrest Barth without a warrant. The "process" Ebens was executing was the warrantless arrest of Barth. In doing so, he was not only acting "in good faith and under color of law" but was acting within his lawful statutory authority to make the arrest.

[¶ 16] Under the circumstances of this case, we conclude the trial court's instruction to the jury adequately and correctly apprised the jury of the applicable law and neither misled nor confused the jury. Barth's claim the jury instruction was incorrect and prejudicial is without merit.

## IV Acquittal Motion

[¶ 17] At the conclusion of the prosecution's case, Barth moved for a judgment of acquittal, which was denied by the trial court. Barth asserts the trial court erred in denying the motion because there is not substantial evidence to support a guilty verdict of preventing arrest. When a defendant moves for judgment of acquittal under N.D.R.Crim.P. 29(a), the trial court must view the evidence in the light most favorable to the state and must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. *State v. Hafner,* 1998 ND 220, ¶ 21, 587 N.W.2d 177. In *State v. Gagnon,* 1999 ND 13, ¶ 23, 589 N.W.2d 560, we explained our appellate review of a trial court's denial of

a motion for judgment of acquittal under N.D.R.Crim.P. 29(a):

> To successfully challenge the sufficiency of the evidence on appeal, a defendant must show there is no reasonable inference of guilt when viewing the evidence in the light most favorable to the verdict. By presenting evidence after the denial of the motion, the defendant permits this Court to review on appeal the entire record to determine whether sufficient evidence exists to sustain the verdict. In deciding whether there is sufficient evidence, we do not resolve conflicts in the evidence nor do we weigh the credibility of the witnesses. We determine only whether there is competent evidence which could have allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. (Citations omitted.)

Under N.D.C.C. § 12.1–08–02(1), a person is guilty if, with intent to prevent a public servant from effecting an arrest of himself or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employ means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty.

[¶ 18] Barth argues a defendant cannot be convicted of preventing arrest if the defendant merely sits or refuses to cooperate. But, viewed in a light most favorable to the jury verdict, the evidence shows that upon being stopped by Officer Ebens, Dale Barth was belligerent and uncooperative and told the officers he was not going with them and would not allow them to arrest him. When Ebens opened the pickup door and reached for Barth's arm to escort him out of the pickup for the arrest, Barth pulled back, raised his arms, and clinched his fist in a manner which caused Ebens to believe that Barth was going to start hitting or kicking the officers. To avoid risking injury to themselves, the officers decided to use pepper spray to make the arrest. Although the pepper spray caused Barth to submit to the arrest, Barth provided some resistance as the three officers grabbed him and threw him to the ground. Barth refused to immediately bring his arm back so that he could be handcuffed and he also refused to straighten his legs when commanded by the officers to lie in a prone position.

[¶ 19] Under N.D.C.C. § 12.1–01–04(11) the term "Force" is defined to mean "physical action." The term "substantial" is not defined under our statute, but is defined in *Merriam–Webster's Collegiate On–Line Dictionary*, www.m-w.com (2001) to mean "not imaginary or illusory ... considerable in quantity; significantly great." A refusal to cooperate with arresting officers in a manner that requires officers to physically manipulate arrestee to make arrest can constitute unlawful resisting of arrest. *See Brewer v. City of Tulsa*, 811 P.2d 604, 608 (Okl.Crim.App. 1991) (bus passenger who would not pay fare was guilty of resisting arrest when he offered passive resistance, slid to the floor, and refused to move for officer attempting to handcuff him and place him in police car); *see also State v. Sherwood*, 5 Conn. Cir.Ct. 583, 258 A.2d 558, 560 (1969) (defendants were guilty of resisting arrest when they, upon being arrested for breach of peace, "refused to get out of the [police] cruiser, requiring the officers to drag them from the cruiser" and then they "laid down on the ground" so the officers had to bodily pick them up and place them in a police vehicle for transport). We believe a jury could have found the physical action required by the officers to make Barth's arrest was considerable or significantly great.

[¶ 20] We conclude there is substantial evidence upon which the jury could find that Barth, with intent to prevent the officers from effecting an arrest, acted in such a way as to create a substantial risk of bodily injury to the officers and that Barth's conduct justified the officers using substantial force to overcome Barth's resistance to the arrest. There is evidence upon which the jury could find the officers were justified in using pepper spray and in physically forcing Barth out of the pickup and onto the ground to effect the arrest. The jury could have reasonably found the officers' actions constituted substantial force, necessitated by Barth's conduct and demeanor. We hold there is competent evidence upon which the jury could draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

[¶ 21] The judgments of conviction are affirmed.

[¶ 22] SANDSTROM, NEUMANN, MARING, and KAPSNER, JJ., concur.