2004 ND 45

**Ginger HARFIELD and Todd Harfield, Plaintiffs and Appellants**

**v.**

**Jeremy TATE, Defendant and Appellee.**

**No. 20030039.**

Supreme Court of North Dakota.

Feb. 25, 2004.

Alan C. Erickson, Fargo, ND, for plaintiffs and appellants.

Thomas R. Olson (argued) and Richard N. Jeffries (on brief), Jeffries, Olson & Flom, P.A., Moorhead, MN, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Ginger and Todd Harfield appealed from a judgment entered upon a jury verdict awarding Ginger Harfield damages for injuries sustained in an automobile accident, but ordering the Harfields to pay costs and disbursements to Jeremy Tate. We reverse and remand, concluding the trial court erred in admitting medical records and a letter from Ginger Harfield's doctor about a prior unrelated surgery.

I

[¶ 2] On December 28, 1994, Tate had stopped his pickup in a line of vehicles at a stop sign at the top of an exit ramp off of Interstate 29 in Fargo. As the line progressed forward, Tate heard a noise com-

ing from the back of his pickup and turned to look. Tate then noticed the vehicles ahead had stopped, and he applied his brakes but was unable to stop in time and rear-ended the vehicle in front of him, which was driven by Todd Harfield.

[¶ 3] Todd Harfield and Ginger Harfield, who had been a passenger in the vehicle driven by her husband, brought this negligence action against Tate, claiming they were injured in the crash. The case was tried to a jury in 1998, and the jury found Tate was not negligent. The Harfields appealed from the judgment dismissing their action, and this Court reversed the judgment, concluding the trial court had given an erroneous jury instruction and Tate was negligent as a matter of law. *See Harfield v. Tate*, 1999 ND 166, 598 N.W.2d 840. We remanded for a new trial on the issue of damages. *Id.* at ¶ 23.

[¶ 4] A second jury trial was held in August 2002, with the jury finding Todd Harfield had suffered no damages caused by the accident and awarding Ginger Harfield $2,401.30 for past medical expenses caused by the accident. Because Tate had earlier made an offer of settlement under N.D.R.Civ.P. 68 in excess of that amount, the court ordered that Ginger Harfield was entitled to the damages awarded by the jury plus her costs and disbursements of $4,559.37 incurred prior to Tate's Rule 68 offer. This amount was ordered offset and satisfied by costs and disbursements of $15,253.10 incurred by Tate after the offer of settlement, resulting in a judgment in favor of Tate in the amount of $8,292.39. The Harfields appealed.

[¶ 5] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The Harfields' appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] The Harfields contend the trial court erred in admitting into evidence medical records and a letter in which Ginger Harfield's treating doctor from a 1985 surgery indicated Ginger Harfield was a malingerer and stated it would be a "travesty of justice" if she received disability benefits.

[¶ 7] Under N.D.R.Ev. 401, 402, and 403, the district court has broad discretion in admitting or excluding evidence. *State v. Stoppleworth*, 2003 ND 137, ¶ 13, 667 N.W.2d 586; *State v. Klose*, 2003 ND 39, ¶ 28, 657 N.W.2d 276. Relevant evidence is generally admissible. *Brandt v. Milbrath*, 2002 ND 117, ¶ 13, 647 N.W.2d 674; N.D.R.Ev. 402. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. Under N.D.R.Ev. 403, the trial court also has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Stoppleworth*, at ¶ 13; *Klose*, at ¶ 28. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if its decision is not the product of a rational mental process. *Schaefer v. Souris River Telecomm. Coop.*, 2000 ND 187, ¶ 10, 618 N.W.2d 175.

[¶ 8] Prior to trial, the Harfields moved in limine to exclude evidence relating to Ginger Harfield's 1985 breast surgery. Her surgeon, Dr. Robert Zarrett, had noted in her chart in 1985 that Ginger Harfield was probably a malingerer. In addition, Dr. Zarrett wrote a letter dated August 1, 1985, to Social Security Disability Determination Services pertaining to

Ginger Harfield's application for disability benefits. Dr. Zarrett wrote:

> [T]he patient informed me that she was on unemployment related to her inability to work since the biopsy. I suspect that she is using the breast biopsy as an opportunity to avoid acquiring gainful employment.
>
> . . . .
>
> Recognizing that it is not my duty to determine whether or not this patient is disabled, I cannot help but to give an opinion. I think that she is a malingerer and I cannot find any evidence of a physiologic reason why a breast biopsy which is well healed should be affecting the use of the right arm. I personally do not think that she should be considered disabled and I believe it will be a travesty of justice if she receives disability compensation.

The trial court determined this evidence was relevant and Dr. Zarrett's medical notes and the August 1, 1985, letter were admissible.

[¶ 9] The admissibility of character evidence or evidence of prior bad acts to prove a person acted in conformity therewith on a later occasion is strictly limited by N.D.R.Ev. 404:

> (a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) *Character of Accused.* Except as otherwise provided by statute, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
>
> (2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peace-fulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
>
> (3) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
>
> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 10] Under the rule, the commission of an act cannot be proved by showing the commission of similar acts by the same person at other times, or by showing the act was in conformity with the person's character or a character trait. *See, e.g., State v. Gagnon,* 1999 ND 13, ¶ 10, 589 N.W.2d 560; *Kunnanz v. Edge,* 515 N.W.2d 167, 171 (N.D.1994); *Lange v. Cusey,* 379 N.W.2d 775, 777 (N.D.1985). We summarized the effect of the rule in *State v. Strutz,* 2000 ND 22, ¶ 21, 606 N.W.2d 886 (citations omitted):

> Under N.D.R.Ev. 404(b), evidence of prior bad acts or crimes is generally not admissible unless it is substantially relevant for some purpose other than to point out the defendant's criminal character and to show the probability that he acted in conformity therewith. The rule acknowledges the inherent prejudicial effect prior bad act evidence may have on the trier of fact.

We have also cautioned:

> Specific instances of conduct, while considered the most probative of the types of character evidence, are also the most likely to confuse or create undue

prejudice in the minds of the triers of fact. Explanatory Note, N.D.R.Ev. 405. For this reason, specific instances of conduct, as character evidence, are restricted to when character is in direct issue or when used on cross-examination to rebut an assertion by a witness concerning a person's character.

*Gagnon*, 1999 ND 13, ¶ 13, 589 N.W.2d 560.

[¶ 11] The evidence at issue here was clearly character or prior bad act evidence. Unless admissible under one of the exceptions in the rule, this evidence was inadmissible. It cannot be admitted to show that Ginger Harfield had a propensity to malinger and that she acted in conformity with that propensity after the accident. Tate does not argue the medical notes and letter fit within one of the recognized exceptions under N.D.R.Ev. 404. The only possible relevance of this evidence was to show that Ginger Harfield had feigned the severity of an illness in the past in an attempt at financial gain and that she was doing so again in this case. Rule 404 prohibits such use of propensity evidence.

[¶ 12] We are also mindful of the tenuous connection between this evidence and the subsequent accident and of the particularly inflammatory nature of this evidence within the context of this case. Dr. Zarrett's medical notes and letter pertain to a breast biopsy performed nearly ten years before this accident, and more than seventeen years before the second trial. There is no medical connection between the 1985 breast surgery and the injuries Ginger Harfield alleges she incurred as a result of the 1994 accident. Furthermore, use of the terms "malingerer" and "travesty of justice" could be highly inflammatory and unfairly prejudicial in a jury trial.

[¶ 13] We conclude that under the facts of this case, the district court abused its discretion by admitting the medical notes and the August 1, 1985, letter of Dr. Zarrett. Accordingly, we reverse and remand for a new trial.

## III

[¶ 14] We will briefly address two additional evidentiary issues that may arise upon retrial.

## A

[¶ 15] The Harfields contend the trial court erred in admitting a 1998 deposition of Tate's medical expert, Dr. Miles Belgrade, at the second trial.

[¶ 16] Dr. Belgrade conducted an independent medical examination of Ginger Harfield in 1998, and the parties took his deposition. The videotaped deposition was played for the jury at the first trial. After the judgment following the first trial was reversed on appeal, the Harfields made a motion in limine requesting that Dr. Belgrade's 1998 deposition not be admitted at the second trial. The trial court, noting Dr. Belgrade had conducted a second independent medical examination of Ginger Harfield, determined that the 1998 deposition could be used at the second trial provided the parties conduct a supplemental videotaped deposition of Dr. Belgrade, taking into account Ginger Harfield's updated medical records and the second independent medical examination. A supplemental videotaped deposition of Dr. Belgrade was taken in 2002, and both the 1998 and 2002 depositions were shown to the jury at the second trial.

[¶ 17] The Harfields' objection to use of the 1998 deposition goes to the form, not the substance, of the evidence. The Harfields do not point to specific questions or answers in the first deposition that were inadmissible. Rather, the Harfields contend it was confusing and prejudicial to allow the two bifurcated depositions, and

**160**

Tate should have been required to conduct an entirely new deposition in 2002 covering both independent medical examinations rather than merely updating the first deposition.

[¶ 18] The trial court has great latitude and discretion in conducting the trial, including the manner of presentation of the evidence. *See Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 580 (N.D.1991); *Ward v. Shipp*, 340 N.W.2d 14, 17 (N.D. 1983). As we concluded in *Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 35, 643 N.W.2d 29 (quoting *State v. Leinen*, 1999 ND 138, ¶ 7, 598 N.W.2d 102), "[t]he trial court has broad discretion in evidentiary matters and, absent an abuse of discretion, we will not reverse its decision." A trial court's decision admitting evidence will be reversed on appeal only if the court has abused its discretion by acting in an arbitrary, unconscionable, or unreasonable manner. *State v. Klose*, 2003 ND 39, ¶ 28, 657 N.W.2d 276.

[¶ 19] The Harfields do not challenge any specific content of the 1998 deposition. Evidence of the first independent medical examination and Dr. Belgrade's opinions at that time would have been admissible if covered in a second deposition. The trial court had ruled the 1998 deposition would be admissible before the 2002 deposition was conducted, so the Harfields' counsel had a full opportunity to challenge Dr. Belgrade's 1998 opinions with Ginger Harfield's subsequent medical records and history. Under these circumstances, we conclude the trial court did not abuse its discretion in allowing both depositions into evidence rather than requiring an entirely new deposition covering both independent medical examinations.

## B

[¶ 20] The Harfields contend the trial court erred in admitting testimony of Myron Lofgren, Tate's expert witness.

[¶ 21] We recently set forth the standards for introduction of expert testimony in *Gonzalez v. Tounjian*, 2003 ND 121, ¶ 24, 665 N.W.2d 705 (citations omitted):

Introduction of expert testimony is governed by N.D.R.Ev. 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under Rule 702, expert testimony is admissible whenever specialized knowledge will assist the trier of fact. Rule 702 envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the field in which she is to testify. Whether a witness is qualified as an expert and whether the witness's testimony will assist the trier of fact are decisions within the sound discretion of the trial court which will not be overturned on appeal absent an abuse of discretion.

[¶ 22] In challenging Lofgren's qualifications to testify as an expert, the Harfields essentially argue their experts were better qualified and more highly specialized than Lofgren. They point out Lofgren did not have a degree in mechanical engineering and was not specifically a glass breakage expert. We have previously held, however, that an expert need not be a specialist in a highly particularized field:

An expert need not be a specialist in a highly particularized field if his knowledge, training, education, and experience will assist the trier of fact. The rule does not require an expert to have a

formal title or to be licensed in any particular field, but recognizes it is the witness's actual qualifications that count by providing that an expert can be qualified by knowledge, skill, experience, training, or education.

We have previously held a trial court does not abuse its discretion by admitting expert testimony whenever specialized knowledge will assist the trier of fact, even if the expert does not possess a particular expertise or specific certification.

*Myer v. Rygg*, 2001 ND 123, ¶¶ 14–15, 630 N.W.2d 62; *see also Gonzalez*, 2003 ND 121, ¶ 25, 665 N.W.2d 705.

[¶ 23] Lofgren has an extensive background in accident reconstruction. He was employed by the Minnesota State Patrol for 21 years, received training in accident reconstruction, and taught accident reconstruction for the Minnesota State Patrol. Upon his retirement from the State Patrol in 1983, he formed a private consulting business in accident reconstruction. In his career he has reconstructed more than 3,000 accidents. He also testified he had received specialized training in windshield glass breakage. We conclude the trial court did not abuse its discretion in concluding Lofgren was qualified to testify as an expert.

### IV

[¶ 24] We reverse and remand for a new trial.

[¶ 25] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.