2015 ND 58

**Arlen FLYNN, Beverly Flynn,
Plaintiffs and Appellants**

**v.**

**HURLEY ENTERPRISES, INC., and
Vess E. Hurley, Individually,
Defendants and Appellees.**

**No. 20130426.**

Supreme Court of North Dakota.

March 24, 2015.

Sean T. Foss, Fargo, N.D., for plaintiffs and appellants.

Lawrence E. King, Bismarck, N.D., for defendants and appellees.

CROTHERS, Justice.

[¶ 1]   Arlen and Beverly Flynn appeal from a judgment entered on a jury verdict dismissing their action against Hurley Enterprises, Inc., for maintaining a public or private nuisance near their McKenzie County property.  The district court erred in allowing the introduction of evidence concerning the reputation and good deeds of Vess Hurley and Hurley Enterprises and erred in instructing the jury. Those errors affected the Flynns' substantial rights.  We reverse the judgment and remand for a new trial.

I

[¶ 2]   Since 1999, the Flynns have resided on property they owned in East Fairview, a small unincorporated village which lies on the border between North Dakota and Montana.  In 2007, Hurley Enterprises, which is owned by Vess Hurley, began

operating an oil field services business on property abutting the Flynns' property. The business used the property for equipment and machine storage, including semi-trucks, vacuum trucks, pickups and portable toilets. The business also dumped sewage into a manhole on its property, which was located close to the property line shared with the Flynns. After Hurley Enterprises began operations on the property, the Flynns noticed increased truck traffic and substantial amounts of dust, noise, diesel smoke, lights and sewage odor.

[¶ 3] The Flynns sued Hurley Enterprises and Hurley claiming the noise, odor, dust and general discomfort generated by Hurley Enterprises' business activities constituted a private and public nuisance and seeking abatement of the nuisance and damages. In a pretrial ruling, the district court granted summary judgment dismissing the action against Vess Hurley individually. After a four-day trial, a jury returned a verdict finding Hurley Enterprises did not unreasonably interfere with the Flynns' use of their property so as to create a private or public nuisance, and the action was dismissed.

## II

[¶ 4] The Flynns argue the district court erred in allowing evidence regarding the reputation and good deeds of Hurley Enterprises and its owner, Vess Hurley.

[¶ 5] "A district court has broad discretion over the presentation of evidence and the conduct of trial, but it must exercise its discretion in a manner that best comports with substantial justice." *Wahl v. Northern Improvement Co.,* 2011 ND 146, ¶ 6, 800 N.W.2d 700 (quoting *Manning v. Manning,* 2006 ND 67, ¶ 30, 711 N.W.2d 149). In *Harfield v. Tate,*

2004 ND 45, ¶ 7, 675 N.W.2d 155, we explained:

"Under N.D.R.Ev. 401, 402, and 403, the district court has broad discretion in admitting or excluding evidence. *State v. Stoppleworth,* 2003 ND 137, ¶ 13, 667 N.W.2d 586; *State v. Klose,* 2003 ND 39, ¶ 28, 657 N.W.2d 276. Relevant evidence is generally admissible. *Brandt v. Milbrath,* 2002 ND 117, ¶ 13, 647 N.W.2d 674; N.D.R.Ev. 402. Relevant evidence means 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' N.D.R.Ev. 401. Under N.D.R.Ev. 403, the trial court also has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Stoppleworth,* at ¶ 13; *Klose,* at ¶ 28. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if its decision is not the product of a rational mental process. *Schaefer v. Souris River Telecomm. Coop.,* 2000 ND 187, ¶ 10, 618 N.W.2d 175."

[¶ 6] In *Rassier v. Houim,* 488 N.W.2d 635, 638 (N.D.1992), this Court noted that, for purposes of a nuisance claim under N.D.C.C. § 42–01–01, one of the four common law factors for determining whether the defendant created a condition which unreasonably interfered with the plaintiff's use of property is to balance "the utility of defendant's conduct against the harm to the plaintiff." *See also Hale v. Ward Cnty.,* 2012 ND 144, ¶ 17, 818 N.W.2d 697. Over the Flynns' relevancy objections, the district court allowed five defense witnesses to testify about the reputation and good deeds of Hurley and Hurley Enterprises in the East Fairview community, apparently because the testimony related to "the utility of defendant's conduct."

Mike Otterstetter, a mechanic in Fairview, Montana, who had known Vess Hurley "most of my life," testified:

"Q. . . . . What is Hurley Enterprises' reputation within the East Fairview community?

A. Very good. He's done a lot of good for the whole community. I know of things that he's done that no one even talks about and he wouldn't talk about them because he doesn't brag about what he does. But, I'll tell you, there's a lot of good things coming from that man sitting at that table right there."

Doug Dschaak acknowledged he was "pretty good friends" with Vess Hurley and testified Hurley Enterprises had a "good" reputation within the community.

[¶ 7] Shirley Hardy, a resident of the East Fairview area for 60 years, testified:

"Q. Are you familiar with Hurley Enterprises, Vess Hurley's business?

A. Well, like everybody else is. It's a big business in Fairview.

Q. What types of things does Hurley Enterprises do for East Fairview?

A. Well, it contributes wherever it's needed. We had two boys just killed in a motorcycle wreck and he stepped in and took care of lots of things on that. He contributes to the community quite a bit and he's always there to help if we need help on small things on the farm, he volunteers."

[¶ 8] AnnDee Taylor, a teacher at Fairview school, testified:

"Q. Are you familiar with Mr. Hurley's business, Hurley Enterprises?

A. Yes.

Q. And how have you become familiar with that business?

A. Mostly through the school. I am the advisor for Explore America. . . .

. . . .

A. . . . . Vess has always come to me through the school. He's very concerned about any of the lower income kids that are in need. Like I said, I'm the advisor for the Explore America. It's a group that takes the high school on an educational trip to Washington, D.C. and New York City for a week. In the past, if there's any kids that have been short of money Vess's company has given a check for if they have been short on what they have raised because they raise all their funds themselves. And then just two years ago we had a student that has been raised by her sister and her parents are meth-heads, it's how you're gonna put it, and he was very concerned about her. He asked if there was any way—he wanted her to go. I told him I wasn't sure since there was only two days before the trip but I would call the company and see if we could make it happen. And he said if there was any way, you know, if we could make it happen, that he would write a check. So, I called and we checked into it and they told me if we could get the money that they would make it happen. So, they wrote a check and the girl got to go on the trip. Everything is done anonymously. He absolutely wants no credit. That's what amazes me the most. Since then he has bought the same girl a car, pays all of the insurance, pays all of the repairs. This girl would have nothing. The sister tries to help out as much as she can but I know that it has meant the world to her. . . ."

[¶ 9] Vess Hurley testified that he plowed snow for East Fairview without charge because he finds it "enjoyable"; that when his plowing damaged a resident's flowerbed, he and his children fixed it the next spring; and that he owns "the Big Opening Bar" outside of town which

he allows community members to use without charge so long as they "clean it."

[¶ 10] In *Rassier,* 488 N.W.2d at 638, this Court cited provisions of the Restatement (Second) of Torts (1977) as authority for the common law factor requiring "a balancing of the utility of defendant's conduct against the harm to the plaintiff." Section 828 of the Restatement (Second) of Torts (1977), explains:

> "In determining the utility of conduct that causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:
>
> (a) the social value that the law attaches to the primary purpose of the conduct;
>
> (b) the suitability of the conduct to the character of the locality; and
>
> (c) the impracticability of preventing or avoiding the invasion."

The Restatement clarifies that the activity at issue in the balancing test is the property owner's invasive conduct that is alleged to constitute the nuisance, not conduct of the defendant in the community at large unrelated to the challenged conduct. *See generally* J. Purver, Annot., *Modern status of rules as to balance of convenience or social utility as affecting relief from nuisance,* 40 A.L.R.3d 601, 606 (1971) (describing the necessity of "weighing the social utility of conduct constituting a nuisance").

■ [¶ 11] Our case law recognizes this principle. In *Hale,* involving a law enforcement shooting range alleged to be a private and public nuisance, we spoke of "balancing the utility of the law enforcement shooting range against the harm to the Hales." 2012 ND 144, ¶ 18, 818 N.W.2d 697. In *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n,* involving a feed plant alleged to be a private nuisance, this Court said it must

"consider what role the alleged nuisance activity has with the general business activities of the community and state, which are primarily farming and agriculture." 337 N.W.2d 427, 431 (N.D.1983). The balancing of a defendant's conduct which constitutes a nuisance has nothing to do with a defendant's unrelated good deeds performed in the general community.

[¶ 12] The challenged testimony here was irrelevant because it did not "tend[ ] to prove or disprove any fact in issue." *Peters–Riemers v. Riemers,* 2001 ND 62, ¶ 7, 624 N.W.2d 83. To the extent this testimony can be considered character evidence, it was also inadmissible under N.D.R.Ev. 404(a). *See, e.g., State v. Alvarado,* 2008 ND 203, ¶ 10, 757 N.W.2d 570 ("evidence of a person's character to prove a person acted in conformity with the evidence is inadmissible").

■ [¶ 13] Hurley Enterprises argues the Flynns "opened the door" for the admission of this evidence. In *Schwab v. Zajac,* we explained:

> "In describing the 'opened the door' doctrine, one court has explained that "[a]s an evidentiary principle, the concept of 'opening the door' allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted.'" *Lawrence v. State,* 846 So.2d 440, 452 (Fla.2003) (quoting *Rodriguez v. State,* 753 So.2d 29, 42 (Fla.2000)). In *State v. Hernandez,* 2005 ND 214, ¶ 20, 707 N.W.2d 449, we cited several cases involving 'the admissibility of otherwise inadmissible evidence after the opposing party opened the door for the admission of that evidence.' We explained, 'The common thread in those decisions is that a trial court is vested with discretion to decide whether a party has opened the

door for the admission of otherwise inadmissible evidence.' *Id.* at ¶ 21."

2012 ND 239, ¶ 16, 823 N.W.2d 737.

[¶ 14] Hurley Enterprises relies on three statements Arlen Flynn made during the trial which "attempted to demonize" Hurley Enterprises. However, these "statements" simply were affirmative responses to leading questions posed by Hurley Enterprises' attorney during cross-examination. The Flynns did not "open the door" to this evidence.

[¶ 15] Hurley Enterprises also relies on the Flynns' attorney's opening statement that the Flynns were aware "Hurley Enterprises likely has done some good in Fairview and East Fairview." We have said that "[a]ssertions of recent fabrication or improper influence or motive made during counsel's opening statement may ... open the door to ' admissibility' of prior consistent statements of the witness." *State v. Burgard*, 458 N.W.2d 274, 279 (N.D.1990); *see also State v. Reinart*, 440 N.W.2d 503, 507 (N.D.1989); M. Ahlen, *Opening Statements in Jury Trials: What are the Legal Limits?*, 71 N.D. L. Rev. 701, 717 (1995). Courts in other jurisdictions disagree whether comments of counsel during opening statements "open the door" to the admission of otherwise inadmissible evidence. *Compare, e.g., United States v. Chavez*, 229 F.3d 946, 952 (10th Cir.2000) ("It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party."); *Bass v. State*, 270 S.W.3d 557, 563 (Tex.Ct.Crim.App.2008) ("Our case law supports a decision that a defense opening statement ... opens the door to the admission of extraneous-offense evidence ... to rebut the defensive theory presented in the defense opening statement.") *with United States v. McGuire*, 808 F.2d 694, 696 (8th Cir.1987) ("it was

error for the district court to allow the government to introduce rebuttal evidence in its case-in-chief in anticipation of an entrapment defense that was proposed [during defendant's opening argument], but that never actually materialized"); *State v. Anastasia*, 356 N.J.Super. 534, 813 A.2d 601, 606 (2003) ("an improper or erroneous statement made on opening is not properly corrected by allowing the introduction of prejudicial evidence that would otherwise be inadmissible" because "[o]pening statements are not evidential" and "the remedy lies in a curative instruction to the jury"). Here, the comment by the Flynns' attorney that "Hurley Enterprises likely has done some good in Fairview and East Fairview" obviously was made in anticipation of evidence regarding the balancing of the utility of the defendant's conduct alleged to constitute the nuisance. However, the evidence about Hurley Enterprises and Hurley's favorable reputation and good deeds strayed far beyond any invitation to consider pertinent evidence of the utility of Hurley Enterprises' conduct alleged to constitute a nuisance.

[¶ 16] We conclude the district court abused its discretion in allowing introduction of evidence about the reputation and good deeds of Hurley and Hurley Enterprises.

### III

[¶ 17] The Flynns argue the district court erred in instructing the jury on the immunity afforded nuisance defendants.

[¶ 18] In *State v. Romero*, 2013 ND 77, ¶ 16, 830 N.W.2d 586, we explained:

" 'Jury instructions must correctly and adequately inform the jury of the applicable law, and must not mislead or con-

fuse the jury.' *State v. Erickstad*, 2000 ND 202, ¶ 16, 620 N.W.2d 136. On appeal, we review jury instructions as a whole to decide whether the instructions 'adequately and correctly inform the jury of the applicable law, even though part of the instruction standing alone may be insufficient or erroneous.' *State v. Barth*, 2001 ND 201, ¶ 12, 637 N.W.2d 369. When considered as a whole, if a jury instruction correctly advises the jury of the law, 'it is sufficient even if part of it standing alone may be insufficient.' *Id.* 'Selecting only a part of the instructions without considering the jury instructions as a whole is not proper because it can result in erroneous and misleading inferences.' *City of Minot v. Rubbelke*, 456 N.W.2d 511, 513 (N.D. 1990). Further, a district court is not required to give jury instructions in the specific language requested by the defendant. *Id.* at 513.

"Only scant evidence may be needed to support a jury instruction." *Cartier v. Northwestern Elec., Inc.*, 2010 ND 14, ¶ 11, 777 N.W.2d 866 (quoting *Harfield v. Tate*, 1999 ND 166, ¶ 6, 598 N.W.2d 840).

[¶ 19] Hurley Enterprises presented evidence that because East Fairview is an unincorporated town, it is governed by the McKenzie County Board of Commissioners. In 2008 the Flynns and others petitioned the Board to abandon Cass Avenue, a street located between the Flynns' property and Hurley Enterprises' property. The Board denied the petition, in part to allow Hurley Enterprises access to a building on its property. There had been no county-wide zoning in McKenzie County until zoning ordinances were adopted by the Board in 2012. At that time, "anything that was there," including Hurley Enterprises, was "grand fathered in." East Fairview has a three-member sewer board, which is a nonprofit entity that met informally and infrequently. One or more members of the sewer board authorized Hurley Enterprises to dump sewage into the manhole near the property line with the Flynns.

[¶ 20] Based on this evidence, the district court instructed the jury, over the Flynns' objection, as follows:

"*ACTS DONE UNDER STATUTORY AUTHORITY NOT DEEMED NUISANCE*

"Nothing which is done or maintained under the express authority of a statute, law, or action of a governing body shall be deemed a nuisance. This protection is lost if the authority given is exceeded or is exercised in a negligent or unreasonable manner."

With the exception of the phrase "law, or action of a governing body," the first sentence of the instruction is taken from N.D.C.C. § 42–01–12, which provides: "Nothing which is done or maintained under the express authority of a statute shall be deemed a nuisance." The second sentence of the instruction is from *City of Fargo v. Salsman*, in which we stated the protection afforded under N.D.C.C. § 42–01–12 "is lost if the authority given is exceeded or is exercised in a negligent or unreasonable manner." 2009 ND 15, ¶ 16, 760 N.W.2d 123 (quoting *Messer v. City of Dickinson*, 71 N.D. 568, 576–77, 3 N.W.2d 241, 245 (1942)).

[¶ 21] Because N.D.C.C. § 42–01–12 grants immunity to a defendant in a nuisance action, the statute must be strictly construed. *See Messer*, 71 N.D. at 577, 3 N.W.2d at 245. Few of our cases discuss the scope of the immunity granted by N.D.C.C. § 42–01–12. In *Messer*, this Court held a "municipality is not subject to a suit for damages for creating or maintaining a nuisance where the act that is made the basis of the suit is specifically authorized by statute and the nuisance is

the necessary result of its reasonable and proper performance." 71 N.D. at 568, 3 N.W.2d at 241 Syll. 2. In *Messer*, a state statute allowed cities to discharge sewage into rivers, but the Court ruled the City was nevertheless liable because that statutory authority "was limited by the duty resting upon the city to exercise its authority in a reasonable manner and to take all reasonable precautions against damaging private property." *Id.* at 578, 3 N.W.2d at 246. In *Kinnischtzke v. City of Glen Ullin*, another sewage discharge case, this Court explained that specific legislative authorization does "not sanction acts of a municipality resulting in private damage where that damage was not the inherent result of the exercise of statutory authority, but resulted from the manner in which that authority was exercised." 79 N.D. 495, 509, 57 N.W.2d 588, 596 (1953). In *Salsman*, we did not address whether the City's zoning ordinances expressly authorized the defendant's use of property because that use, in any event, was exercised in an unreasonable manner. 2009 ND 15, ¶¶ 15–16, 760 N.W.2d 123.

[¶ 22] Section 42–01–12, N.D.C.C., is identical to and was derived from California Civil Code § 3482, and court decisions interpreting the California statute are relevant. *See J.P. Furlong Enters., Inc. v. Sun Exploration and Prod. Co.*, 423 N.W.2d 130, 138 n. 27 (N.D.1988). In *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, the California Supreme Court explained why a narrow construction of the statute is necessary:

> "We have consistently applied a narrow construction to section 3482 and to the principle therein embodied. Thus, a number of years ago we observed, " 'A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.' " (*Hassell v. San Francisco* (1938) 11 Cal.2d 168, 171, 78 P.2d 1021, 1022–23; quoting 46 C.J., Nuisances, § 41, p. 674; see also *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 291, 142 Cal.Rptr. 429, 572 P.2d 43; *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 938, fn. 16, 101 Cal.Rptr. 568, 496 P.2d 480).

> "As we recently confirmed in *Varjabedian*, 'A requirement of "express" authorization embodied in the statute itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability.' (P. 291, 142 Cal.Rptr. p. 433, 572 P.2d p. 47)."

26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329, 1336 (1979). Consequently, in *Greater Westchester* the court rejected the argument the City's airport was immune from liability for nuisance caused by noise under Cal. Civ.Code § 3482 based on federal and state statutes because "statutes which broadly authorize or regulate airports and aircraft flights do not create a legislative sanction for their maintenance as a nuisance." 160 Cal.Rptr. 733, 603 P.2d at 1337. In *Varjabedian*, the court ruled state statutes authorizing municipal construction of sewage plants did not immunize a city from nuisance liability because it could not "be fairly said that the Legislature contemplated, to any extent, the creation of a malodorous nuisance when it authorized sewage plant construction."

142 Cal.Rptr. 429, 572 P.2d at 48. The court in *Varjabedian* also held:.

"[T]he exculpatory effect of Civil Code section 3482 has been circumscribed by decisions of this court. In *Hassell v. San Francisco* (1938) 11 Cal.2d 168, 171, 78 P.2d 1021, 1022, we said: " 'A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.' " This interpretation was reiterated in *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 938, 101 Cal.Rptr. 568, 496 P.2d 480, and we adhere to it in the case at bar."

142 Cal.Rptr. 429, 572 P.2d at 47. California courts likewise have held that defendants are not immune from nuisance liability merely because they are conducting business in a district zoned for their types of activities. *See Venuto v. Owens–Corning Fiberglas Corp.*, 22 Cal.App.3d 116, 99 Cal.Rptr. 350, 359 (1971); *Fendley v. City of Anaheim*, 110 Cal.App. 731, 294 P. 769, 771 (1930); *Williams v. Blue Bird Laundry Co.*, 85 Cal.App. 388, 259 P. 484, 485 (1927); *see also* 58 Am. Jur. 2d *Nuisances* § 393 (2012). North Dakota shares this legal proposition. *See Jerry Harmon Motors, Inc.*, 337 N.W.2d at 430 (defendant's compliance with city's zoning ordinances "is not per se conclusive of the issues" in nuisance action).

[¶ 23] Hurley Enterprises relies on a county's general authorization to zone property as the express statutory authority qualifying it for immunity under N.D.C.C. § 42–01–12. Section 11–33–01,

N.D.C.C., provides in relevant part that "the board of county commissioners of any county may regulate and restrict within the county ... the location and the use of buildings and structures and the use, condition of use, or occupancy of lands for residence, recreation, and other purposes." This statute does not expressly or by necessary implication authorize the actions of Hurley Enterprises alleged to be a nuisance. Nor can the Board's refusal to grant the petition to abandon Cass Avenue be considered express authorization of Hurley Enterprises' allegedly invasive actions.

[¶ 24] Moreover, the addition to the instruction of the phrase, "law, or action of a governing body," is particularly troublesome. Hurley Enterprises has not presented any express statutory authority under which the nonprofit sewer board was acting. Section 42–01–12, N.D.C.C., requires that the conduct asserted to be a nuisance be expressly authorized by "statute." Although a city ordinance falls within the meaning of "statute" under Cal. Civ.Code § 3482, *see Wheeler v. Gregg*, 90 Cal.App.2d 348, 203 P.2d 37, 51 (1949), the jury instruction here uses the word "or" to preface the phrase "action of a governing body." The word "or" is "disjunctive in nature and ordinarily indicates an alternative between different things or actions." *Gadeco, LLC v. Industrial Comm'n*, 2013 ND 72, ¶ 15, 830 N.W.2d 535 (quoting *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 20, 590 N.W.2d 454). Contrary to N.D.C.C. § 42–01–12, the instruction allowed the jury to consider any action of a governing body, whether or not authorized by statute, to immunize a defendant in a nuisance action. The instruction misstated the law and was not supported by evidence.

[¶ 25] We conclude the district court erred in instructing the jury.

## IV

[¶ 26] The Flynns argue the district court's error in allowing introduction of the reputation and good deeds evidence and its error in instructing the jury justify reversal and remand for a new trial.

[¶ 27] "Alleged errors regarding the admission of evidence are governed by N.D.R.Ev. 103, which requires a substantial right of the party be affected" for the error to be reversible. *Van Berkom v. Cordonnier*, 2011 ND 239, ¶ 18, 807 N.W.2d 802. " 'Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.' " *Travelers Cas. Ins. Co. of America v. Williams Co. Constr., Inc.*, 2014 ND 160, ¶ 11, 851 N.W.2d 164 (quoting *Cartier v. Northwestern Elec., Inc.*, 2010 ND 14, ¶ 11, 777 N.W.2d 866). The harmless-error standard in civil cases is set forth in N.D.R.Civ.P. 61, which provides:

> "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

[¶ 28] One of the jury instructions for determining whether a nuisance had been established informed the jury "[t]he factors you are to consider in assessing the reasonableness of the Defendant's interference with the Plaintiffs' use of their property include . . . balancing the utility of the Defendant's conduct against the harm to the Plaintiffs." The record indicates Hurley Enterprises is a big part of, and has a favorable reputation in, the East Fairview community. However, Hurley Enterprises did not focus during the trial on the utility of its business activities alleged to constitute a nuisance to the East Fairview community or to oil development in general. Instead, Hurley Enterprises relied on the reputation of and the good deeds performed by Vess Hurley and Hurley Enterprises to satisfy the utility part of the balancing analysis. During closing arguments Hurley Enterprises' attorney told the jury the instruction on balancing was "critical in your analysis" and argued "[w]hen you are balancing the utility of the Defendant's conduct against the harm you do look at everything involved and you do look at Hurley Enterprises' benefits to the community." This improperly admitted reputation and good deeds evidence had a direct bearing on whether Hurley Enterprises' conduct could be viewed as constituting a nuisance.

[¶ 29] The erroneous jury instruction essentially affords immunity to a defendant in a nuisance action. This instruction expanded immunity for nuisance far beyond what the law allows by exculpating Hurley Enterprises through any action taken by a governing body regarding its activities. Hurley Enterprises' attorney stated during closing arguments that this was a "critical instruction" and argued that nearly all of the conduct alleged to be a nuisance was specifically authorized by actions of the Board of County Commissioners or the lagoon board. The jury may well have found Hurley Enterprises was immune from liability under this erroneous instruction.

[¶ 30] Having reviewed the record, we conclude these errors affected the Flynns' substantial rights, entitling them to a new trial.

## V

[¶ 31] The judgment is reversed and the case is remanded for a new trial.

[¶ 32]  LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 33]  I concur in the result and most of the majority opinion.  I am, however, concerned with the reliance on the California cases cited in part III of the opinion. While I agree that N.D.C.C. § 42–01–12 was derived from the California Civil Code and that court decisions interpreting that section are relevant, the cases cited in the majority opinion were decided after that provision became a part of the North Dakota statutes.  Thus, while the California decisions may be relevant, where a statute is taken from another state and adopted without change the presumption that we adopted that state's construction of that statute arises only when that construction was previously placed upon it by the courts of the state from which the statute was taken.  *State v. Dilger*, 322 N.W.2d 461 (N.D.1982).

[¶ 34]  My concern is the language under the California cases appears to negate the protection provided by the statute. For example, in the airport case the language might be read to require the statute must specifically provide an airport be built *and* make noise before the protection of the statute would apply.  *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329 (1979).  It defies common sense to conclude that an airport would cause no noise.  I would not conclude an airport that creates any noise is a nuisance; rather, only those airports that create excessive noise should constitute a nuisance.  *Cf. Eck v. City of Bismarck*, 302 N.W.2d 739 (N.D.1981) (zoning ordinance was a reasonable attempt by the city to prohibit residential development in areas considered least suitable for such purposes because of excessive noise levels caused primarily by flying aircraft in vicinity of the airport).

[¶ 35]  Although the previous cases of this Court may not define the scope of the immunity under N.D.C.C. § 42–01–12, I believe that scope can only be defined on a case-by-case basis and I would not rely on the California cases to define the extent of the immunity in a given case.  Rather, I believe it is enough direction that we strictly construe the statute as the Court did in *Messer v. City of Dickinson*, 71 N.D. 568, 3 N.W.2d 241 (1942), discussed above in the majority opinion.

[¶ 36]  In other respects I concur in the analysis and the result of the majority opinion.

[¶ 37]  GERALD W. VANDE WALLE, C.J.